## Margaret Pepper's Will.

Where property is conveyed by A. to B. in trust for the use of A. for life, with a power reserved to A. to dispose of it by writing under seal in the nature of a last will and testament, and duly attested by two or more witnesses, and to such persons as A. might appoint; and a will is thus made by A.; the legatees under such will can only claim under it as the execution of the appointment.

A gift to A. and to such person as he shall appoint, is absolute property in A. without appointment; yet if it is to him for life, and after his death to such as he shall appoint by will, he must make such appointment in order to entitle that person to anything. But the question on the execution of a power by a testator is generally a question of intention. Hence the express declaration of such intention to execute the power need not appear on the face of the will.

It is a settled rule, that no terms, however comprehensive, in a will, although sufficient to pass every other species of property real and personal, will execute a power, unless they demonstrate that the testator had the power in contemplation, and intended by his will to execute it. If, however, the will contain a disposition of real or personal estate which is the identical subject of the power, then the power is deemed executed by the will, even when not specifically referred to.

But no general devise or bequest of all a testator's property real and personal, nor a general residuary clause, of themselves, are a sufficient power of appointment by a testator. Yet, however, when one having a power to dispose of real estate by his last will, and having *no other real estate* except that over which he possesses the power, devises by his will generally *all his real estate*, such devise is deemed to have been made in execution of the power, although such power is not specially referred to, or such real estate is not specially described in the devise.

This principle has been held to embrace the execution of a power of appointment in relation to specific personal estate, where there is a special bequest of such personalty. But if the personal chattels were such in their nature as to be subject to constant change and fluctuation, a different rule must be applied. In such cases the will must refer to them as the subject of the power.

Where it was declared in a deed that the appointment was to be executed by writing, under hand and seal in the nature of a last will and testament, and duly attested by two or more witnesses, and it was in writing, and in the presence of two witnesses, but not under seal; such is not a good execution of the power; but the same is not adequately executed as a general rule without the *seal*.

A devise under such circumstances would be void, unless it is ultimately to enure to charitable uses. Where, however, it is for the benefit of charities, any writing, however informal as an execution of a power, is good as an appointment, within the statute of charitable uses.

The law of charitable uses has always formed a part of the civil code of Pennsylvania. The statute of 43 Eliz., as a statute, has never been adopted in this state. But its conservative provisions have been in force here, by common usage and constitutional recognition. Not only so, but the more extensive range of charitable uses which chancery sustained before the statute of Eliz., and even beyond it.

Where a power is executed by a will, in perfect conformity with our statute of wills, but in which a formula is omitted not required by other statutes, although required by the power authorizing the appointment by will; equity will aid the

defect in favour of a charity; the will in other respects being executed according to the statute of wills. In this state, when the bequest is in conformity with our statute of wills, and is to such charities as are always sustained in this Commonwealth, a mere formal defect in the execution of the power, will not be suffered to interfere with the provisions of *the will*.

*May* 25. THIS case arose on a petition by some of the heirs at law of Margaret Pepper, deceased, stating, that on the 3d day of June, 1837, the said Margaret conveyed by deed all her real estate to one George Pepper, who was now deceased, and the said Margaret was also dead; that although the deed contains certain trusts, and reserved to the said Margaret the power of disposing of the same by a writing under her hand and seal, in the presence of two witnesses, in the nature of a last will and testament; yet that she had died without the exercise of any such power or authority thus reserved to her; and praying the Court to appoint some suitable person as a trustee in the place of the said George Pepper, who was dead, in order that the uses and trusts in said deed might be executed.

To this petition an answer was filed by George H. Thompson, in which he admitted the execution of the deed of trust as set forth in the petition, and that the trustee was deceased, and the death of the said Margeret; but denied that she had failed to exercise the power reserved to her in said deed by a testamentary disposition, but averred that by a writing, in the nature of a last will and testament, dated the 24th day of January, 1849, under her hand but without seal, she appointed the said Thompson and one Henry Seybert, who declined acting as executors thereof, and ordered her real estate to be sold by them at public or private sale, and the personal estate, amounting to about $300, she disposed of in the manner set forth in the will. In the first place she gave to George H. Thompson $3000 in trust to be invested properly, and to pay to Julia Ann Miller during her life the income of said sum, and after her death, the remainder, two-fourth parts to the Pennsylvania Bible Society, for the purposes of said society, and one-fourth part unto the treasurer of the Foreign Committee of the Board of Missions of the Protestant Episcopal Church in the United States of America, to be applied in support of foreign missions; and the other fourth part thereof to the treasurer of the Domestic Committee of the Board of Missions of the Protestant Episcopal Church in the United States, to be applied in support of domestic missions. There was also left to the same trustee $3000 for another person, with remainder over on a certain contingency, and to the same trustee,

various other bequests, with remainders, after the termination of the life-estates, to the same charitable uses as mentioned in the first.

The case was heard on petition and answer, and *one* admitted fact, which was, that the said deceased had no other real estate but that described in the deed of trust, and only about $300 worth of personal estate.

The cause was argued by Mr. *Ingraham* for the petitioner, and Mr. *Price* for the respondent.

Mr. *Price* contended that a donee may execute a power without referring to the instrument, if the attestation of the donee appears. Cited 1 Sug. 373, 430, 385, 388; Standen *v.* Standen, 2 Vesey, 589; 2 Watts, 185; Lewis *v.* Lewellin, 1 Taun. 104; 1 Sim. 28; 4 Kent Com. (6th ed.) 344.

It is always a question of intention, whether a party means to execute the power or not. Formerly, it was required there should be an express reference to the power; but it is not necessary now. 8 Vesey, 616; Lancaster *v.* Dolan, 1 Rawle, 231; 7 Barr, 530; 2 Watts, 185; 8 Barr, 418.

A greater latitude is taken where it is a party's own estate: Porter *v.* Turner 3 S. & R. 114; 2 Vint. 350. The Court, in deciding upon the intention of a testator, receive evidence of the value of the property devised or referred to in the will. Marshall's Appeal, 2 Barr, 388; Brown's Estate, 2 Barr, 428; 4 John. R. 63; 6 Cruise, 173; 1 P. Wm. 286; 4 Bro. R. 446; 2 Vesey, 616; 1 Story's Rep. 426, 445; 2 Story, Com. Eq. § 1062, 431, note 3.

The opinion of the Court was delivered by

KING, President.—Margaret Pepper, by deed executed on the 3d day of June, 1837, conveyed to George Pepper certain valuable described real estate of which she was owner, and which composed all her property of any value, except a very small amount of personal estate, principally household furniture. The profits of the estate were to be received by Miss Pepper, during her life. A power was reserved to her, to dispose of it " to such person or persons, purpose or purposes, and at the time and times, and in such parts and proportions, manner and form, as the said Margaret Pepper, whether sole or covert, *by any writing under her hand and seal*, in the nature of a last will and testament, *and duly* attested by two or more credible witnesses, should direct, limit, and appoint. And in case the said Margaret Pepper should not have

executed *such writing*, in the nature of a last will and testament, then in further trust for the right heirs of the said Margaret Pepper, according to the intestate laws of Pennsylvania." On the 24th of January, 1849, Miss Pepper executed a last will and testament in the presence of two witnesses, which was signed by her, but is not sealed. This will does not express on its face to have been made in execution of the power reserved by the deed of June 1837; but, except the small personal estate referred to, she possessed no other property of any value on which the will could operate. The will in the first place devises all her estate, real and personal, to her executors, George H. Thompson and Henry Seybert, in trust to sell the same and convert it into money, and apply the same to the payment of her debts and legacies. The money thus raised, she disposes of as follows:—First, as to $3000 thereof, in trust to pay the interest thereof to her niece, Julia Ann Miller, during her natural life, and after her decease the principal sum to be divided into four equal parts; two parts thereof to be paid over to the Pennsylvania Bible Society, for the purposes of the said society; one part thereof to the treasurer for the time being of the Foreign Committee of the Board of Missions of the Protestant Episcopal Church in the United States of America, to be applied in support of *foreign missions;* and one part thereof to the treasurer of the Domestic Committee of the *Board of Missions* of the Protestant Episcopal Church in the United States of America, to be applied in the support of domestic missions. Second, as to another $3000, in trust to apply the interest thereof to the support and education of A. Hamilton Thompson, son of her late nephew, Theodore Thompson, until he arrives at the age of twenty-five years, when the principal is to be paid over to him. But in case of his dying before arriving at that age, this principal to be paid over in the same proportions, to the charities above enumerated. Third, as to another sum of $2000, in trust to pay the interests thereof to her niece, Mary Ann Stump, during her natural life, the principal sum to be divided after her decease in the same way among the same charities. Fourth, as to another sum of $2000, in trust to pay the interest thereof to her niece, Eliza Hutchinson, during her natural life, and after her decease the principal sum to be divided in the same way among the same charities. She then bequeaths a further sum of $2000 to George Thompson, one of her executors, to be safely invested, and the interest thereof to be paid to her friend, Mary Thompson, during her natural life, and after her decease, the principal to be divided in the same way among the same chari-

ties. She also bequeaths to the same George Thompson, a further sum of $4000, in trust to invest as aforesaid, and pay the interest thereof to Jane Brown, during her natural life, and at her decease she directs the division of the principal sum in the manner heretofore described. She then bequeaths two small legacies of $40 each, to two coloured servants, and a legacy of $200 to a female relation. The residue of her estate she gives to her executors in trust to distribute the same among such religious societies and objects, as they may deem expedient, and in such sums and forms, as they may deem proper: declaring it to be her will, that they shall have the same entire control, as she could have had if living to distribute the same. In a codicil she directs the sum of $500 to be added to each of the legacies of her nieces, Eliza Hutchinson and Mary Ann Stump, so that they shall each be increased to $2500. This codicil is signed in presence of two witnesses, but is not under seal.

The case came before the Court under a petition filed on behalf of a portion of the heirs-at-law of Margaret Pepper, to appoint a new trustee under the deed of settlement of June 1837, in the place of George Pepper, who is deceased. The application is resisted by the executors and appointees of the will of Margaret Pepper, who insist that the will is a sufficient execution of the power secured to her by the deed of 1837, and that even if that is not so, this Court has no jurisdiction to grant the relief prayed for by the petitioner.

The questions involved in the cause are of great interest. They have therefore received a more than ordinary consideration from the Court. For the purposes of simplification and clearness, we propose attempting the solution of four propositions into which the case seems to divide itself. First, is this will a good execution of the power created by the deed of June 1837, supposing it to be adequately executed according to the requisitions of that deed, although it does not on its face purport to be made in execution of the power? Second, is the power on general principles adequately executed by the will, the latter not being under seal, as is required by the deed? Third, if, *on general principles*, the will is not an adequate execution of the power, because not executed under seal, is it a good execution of the power, so far as respects the charitable bequests, under the statute of 43 Eliz., ch. 4; or rather according to the principles of that statute adopted into and forming part of the common law of Pennsylvania, this statute as such not being

in force in Pennsylvania ? Fourth, has this Court the jurisdiction, the exercise of which is invoked by the petition before us.

First, then, is the execution of the power by the will defective as is contended, because the will does not on the face thereof purport to have been made in the intention and with the purpose of executing the power ?

There have been few subjects which have given rise to more discussions, or which have exhibited greater conflicts of opinion among equity lawyers, than those involving inquiry how far it is necessary to refer to the instrument creating a power, in another by which it is supposed to be executed. For the purposes of this case, it is unnecessary to enter into this field of controversy, farther than to refer to certain portions, which have been fully settled in the progress of the conflict, and which rule the case before us.

We will first premise that the legatees in this will can only claim under it, as the execution of the appointment; for, although a gift to A. and to such person as he shall appoint, is absolute property in A. without appointment, yet if it is to him for life, and after his death to such as he shall appoint by will, he must make such appointment in order to entitle that person to anything. A distinction said by Sir William Grant, in Bradley v. Westcott, 13 Vesey, 452, to be slight, but perfectly established, for in such case the property vests. Questions on the executions of powers by testators are, like most questions arising under last wills, questions of intention: Probert v. Morgan, 1 Atk. 444; Ex parte Caswell, 1 Atk. 560; Adams v. Austen, 3 Russell, 461. Hence it has always been held that an express declaration of the intention to execute a power, need not appear on the face of the will, provided such intention otherwise sufficiently appears : Probert v. Morgan, Ex parte Caswell, Adams v. Austen, Bradley v. Westcott, *ubi supra;* Sugd. on Powers, chap. 6, § 7, paragraph 1 ; Andrews v. Emmett, 3 Bro. C. Cases, 303. This general rule is apparently a simple one ; and yet the *inquiry* as to what state of things sufficiently manifests an intention in a testator to execute a power by his will, to which power he does not specifically refer, has given rise to the greater part of the cases on the question whether a pre-existing power has been actually executed by a subsequent will.

It is settled by these cases, that no terms, however comprehensive, in a will, although sufficient to pass every species of property, real and personal, will execute a power, unless they demonstrate that the testator had the power in contemplation, and intended by his will to execute it. Where the will, however, devises or bequeaths described

56

real estate, or specific personal estate, which is the identical subject of the power, in such cases, the power is deemed executed by the will, although not specifically referred to therein. For where the specific and exact property, over which the testator possesses a disposing power by his will, by way of appointment, is specifically and exactly referred to in the devises and bequests of his will, no room is left for an intelligent doubt that in so devising and bequeathing such property he intended to exercise the power over it with which he was invested. But no general devise or bequest of all a testator's property, real and personal, nor any general residuary clause, will be in themselves a sufficient exercise of a power of appointment by any testator. The authorities to this point are numerous and conclusive; Adams *v.* Austen, 3 Russell, 461; Horte *v.* Blackman, 6 Maddock, 190; Lowson *v.* Lowson, 3 Brown's Ch. Rep. 272; M'Leroth *v.* Bacon, 5 Ves. Jr. 159; Moulton *v.* Hutchinson, 1 Atk. 558; Ex parte Caswell, Ib. 55; Bueland *v.* Barton, 1 Henry Black. 136; Croft *v.* Slee, 4 Ves. Jr. 60; Nancrek *v.* Horton, 7 Vesey, Jr. 391; Roach *v.* Hayes, 8 Vesey, Jr. 584; Bradley *v.* Westcott, 13 Vesey, Jr. 444. But this general doctrine, which negatives the adequacy of a general devise or bequest in a will to execute a power possessed by the testator, has also well defined exceptions. Among which is found this: That where one possessing a power to dispose of *real estate* by his last will, and having *no other real estate* except that over which he possesses the power, devises by his will generally all his real estate, such devise is deemed to have been made in execution of the power, although such power is not specially referred to, and although the particular real estate embraced in the power is not specially described in the devise. Thus in Deg *v.* Deg, 2 Peere Williams, 415, Lord Chancellor King ruled that if one tenant for life of lands in Dale, with a power to revoke uses and limit new ones, by his will devises all his lands in Dale, *having* no other lands, the lands in the power will pass by this devise, "*if the will be circumstanced as the power requires, although no mention be made of the power.*"

It is upon this principle the decision in the celebrated case of Standen *v.* Standen, 2 Vesey, Jr. 589, rests; a case the authority of which has never been denied, although the reasoning of Lord Rosslyn therein has been much questioned by subsequent equity Judges and lawyers: See Langham *v.* Newry, 3 Vesey, Jr. 470; Bradley *v.* Westcott, 13 Vesey, Jr. 453; Jones *v.* Tucker, 3 Merivale, 533; Jones *v.* Aurre, 1 Swanst. 66. The recent case of Denn *v.* Roake, 5 B. & C. 732, may be regarded as settling the

doctrine of the English Courts in this particular branch of the law of powers. There Lord Chief Justice Abbott thus sums up the result of all the precedent cases : " If," says he, " a will contains a devise of *all* the testator's lands generally, and he has some lands upon which the will may work by his *interest*, the law will attribute the will to his *interest*, and the land, of which he has *only a power* to devise, will not pass. So, if the will be of all his land in a county or place named, and he has lands of his own therein. On the other hand, if the testator has no lands, or none in the county or place named, upon which the will may work by his interest, there the law will attribute the will to his power, because if that be not done, the will will be void, either wholly or as far as respects the county or place named." The case of Lewis *v.* Lyman, 1 T. R. 104, is an instance of the application of this rule. There a testator, having a power of appointment over certain *freehold* and *copyhold* estates, and being seised of *other freehold estates*, devised all his freehold and copyhold estates, without reference to the power. This was held a sufficient execution of the power as to the copyhold, though not as to the freehold, estates. " The will," said Mr. Justice Best, who sat in the case for the Master of the Rolls, " does not refer to the power, but the question is, *whether it does not refer to the estate.* It refers to the estate in clear and unequivocal terms, and as the rule is, that all the words of a will should if possible have effect, and as these words with respect to copyholds cannot be satisfied by anything short of considering them an execution of the power, ' *ut res magis valeat quam pereat*,' they should be so construed."

The doctrine has been held to extend even to appointments of estates less than of freehold, as in Grant *v.* Lyman, 4 Russ. 292, where it was said by the Master of the Rolls, Sir John Leach, that " there was no distinction between freeholds and leaseholds in the nature of the subjects, the difference being only in the quantity of interest ; and that there did not appear to him to be any solid ground upon which it could be maintained, that a gift of a leasehold, where the donee of the power has no other leasehold than the subject of the power, does not equally manifest an intention to execute the power as the gift of a freehold under the same circumstances."

This principle has been held to embrace the execution of a power to appoint specific personal estate, by a specific bequest of such personalty, as in the case of Walker *v.* Mackie, 4 Russell, 76, where a testatrix, having a power over certain sums in the three per cent. stock which were standing in the name of the Accountant-General

of the Court of Chancery, gave by her will "all the rest and residue of her bank stock to her god-daughter, except £50 of her bank stock, which she gave *thereout* to her executors." This bequest was deemed a good execution of the power, because of its clear manifestation of the intention of the testatrix, as to the particular stock which was the subject of the power.

A general gift of moneys, securities for moneys, and other personal chattels, which are in their nature subject to constant change and fluctuation, stands upon very different principles, and as to them, the will must refer to them, as the subjects of the power, or they will not pass: Grant *v.* Lyman, 4 Russ. 292.

It is manifest that we must go *dehors* the will to ascertain the fact that the testator possessed no other real estate, or specific personalty to which a general devise or bequest thereof could apply, except that embraced in the power; in order to apply this principle to a given case. As to real estate, or specific personalty, this has been done without hesitation, as will be seen from the cases of Jones *v.* Curry, 1 Swanst. 72; Standen *v.* Standen, 2 Ves. Jr. 589; Sibley *v.* Perry, 7 Vesey, 522. All efforts, however, have been resisted to ascertain from the status of the testator's general personal estate, at the time of his death, the existence of a state of things from which an inference could be drawn of his intention to execute a power over any general personal estate by a general or residuary bequest of all his personal property. Inquiries for this purpose have always been refused by Courts of Chancery, as leading to results too speculative, uncertain, and unsatisfactory to form the basis of judicial action: Jones *v.* Tucker, 2 Merivale, 533; Nancrek *v.* Horton, 7 Vesey, Jr. 398; Andrews *v.* Emmet, 2 Brown Ch. Rep. 303; Webb *v.* Honner, 1 Jacobs & Walker, 352.

Applying these principles to the case before us, it is quite clear that the will of Margaret Pepper was a sufficient execution of the power, as respects the real estate secured to herself by the deed of 1837, provided the will is executed in conformity to the requisitions of that power. She had no other real estate except that embraced in the power, nothing savouring of realty, that excepted. This is an undisputed fact. Of consequence this case comes directly within the principles discussed and adopted.

We are thus brought to the second branch of the inquiry, viz. Was the will executed in conformity to the requisition of the power? By the deed of 1837, the power of appointment secured to Margaret Pepper, was to be executed "by any writing under her hand and seal,

in the nature of a last will and testament, and duly attested by two or more credible witnesses." This will is in writing, and executed in the presence of two witnesses, but is without seal. That an instrument so defective in one of the requisitions of the power purporting to be executed by it, would generally be deemed incurably defective execution of the power, is quite clear. Since the case of Doomer v. Thurland, 2 Peere Williams, 506, it has been settled, that a power required to be executed by a last will under seal is not sufficiently executed by such an instrument without a seal. That case arose in equity before Lord Chancellor King, who, considering the question raised as one of pure law, referred it to the Judges of the King's Bench, who decided the power to have been inadequately executed, because the will purporting to execute it was without seal, the power requiring its execution under seal. The impression first entertained by Lord King, that, because the will was good as such, the power was well executed by it, has always since been repudiated, and most rightly; because the solemnities required by the creator of the power in order to its due execution, are intended for the protection of those vested with the authority to dispose of the property. The donees of such powers are generally married females, and others unacquainted with the nature and effect of legal instruments, and such formalities are often most important adjuncts in protecting them from fraud and imposition. But be this as it may, the creator of the power has the right to require their fulfilment, in order to the efficacious execution of the authority given by him; and no Court can, consistently with a just regard to the rights of property, refuse to enforce them.

"If," says Lord Ellenborough, in Hankins v. Kemp, 3 East, 420, "these circumstances be unessential and unimportant, except as they are required by the creator of the power, they can only be satisfied by a strictly literal and precise performance. They are incapable of admitting any substitution, because these requisitions have no other spirit in them that can be satisfied; incapable of receiving any equivalent, because they are in themselves of no value." The case of Porter v. Turner, 3 S. & R. 108, is decided on these principles. There the testatrix, having a power to dispose of the property by any writing under her hand and seal, executed in the presence of two witnesses. This power the testatrix first attempted to execute by a testamentary writing in the form of a letter, signed, but not attested at the time of its date by any witness. Afterwards she added a codicil to this will, which was signed and sealed in the presence of three witnesses. At the same time she acknowledged

2 P

both instruments as her last will. This was adjudged a sufficient execution of the power, upon the ground that the two instruments, thus published simultaneously, in effect constituted one whole. Chief Justice Tilghman, with whom Judge Gibson concurred, says, that "the solemnity of a seal is not considered with the same veneration now, as formerly. *Still this Court has no power to dispense with a seal, where the party creating a power has required one.*"

Since the passage of the recent English Statute of Wills, questions, such as those discussed, have practically ceased to arise in the Courts of that country. By that statute it is provided, that by bequests of all a testator's real or personal estate, all property shall pass, over which he possessed a disposing power, either by direct ownership, or in virtue of any power of appointment; unless otherwise expressed by the will. And that if a will is executed in the manner prescribed by the Act, it shall sufficiently execute any power of appointment possessed by the testator, although other particular forms are required by the creator of the power.

With us, however, the law remains as before the statute. Its enactment shows the principles of the English Courts to have been so inveterately established on this subject as to require the potency of a statute to change them.

It would therefore follow, necessarily, from these premises, that the appointment in this case, not being under seal, is null, unless the fact that the devise is ultimately to enure to charitable uses, saves it from the operation of an otherwise general rule. That this would be the case in England at this time, if the bequests in this will had been bequests of mere personal estate, to continue as such, is clearly shown by the very recent case of Innes *v.* Sayer, 20 Law Journal Reports, 274. There, a power executed by a will made before the recent statute of wills, and defective in a manner analogous to the defect in execution in this case, was sustained as a good appointment to a charitable use. The principle established for centuries in the English chancery in this respect, has been that where an appointment is to a charity, any writing, however informal as an execution of the power, is good as an appointment within the statute of charitable uses. This celebrated statute was passed at a session of Parliament, which began on the 27th of October, and ended on the 19th of December, 1601. Its preamble and enactments show it to have been intended to provide new means for the assertion of existing recognised legal obligations and duties, and not to introduce anything new into law or equity, except new and vigorous remedies.

That this was its true character, is clearly demonstrated by the cases of the Incorporated Society v. Richards, 1 Drury & Warren, 250; Attorney-General v. The Mayor of Dublin, 1 Bligh, 327; Innes v. Sayer, supra; Burr v. Smith, 7 Vermont Rep. 291, and Vidal v. The City of Philadelphia, Howard's Reports.

Although it would seem from precedents cited by Mr. Binney in his great argument in the latter case (p. 59), that equity had exercised, before the statute of 43 Elizabeth, a jurisdiction in all respects analogous to that exercised subsequently, yet most of the cases in the books are decisions since the statute, and purport to have been made under it. Most of these decisions were made under circumstances much more urgent than the present, and the relaxation in favour of charities extended to what might be called, and not too irreverently, extravagant lengths. In the Jesus College, or, as it is called in Hobart, Griffith Flood's case, a devise to a charity was deemed good, although void by the statute of wills, 32 Henry 8, both as a devise of lands to a corporation *in mortmain*, and as the devise of *all* his lands by a tenant *in capite*, when, by the statute of Henry, the right of disposition of lands *in capite* by will was limited to two-thirds, one-third being required to descend: Hobart, 136; Duke on Charitable Uses, by Bridgeman, 363. This cause was decided in 1615.

In Revett's case (1617), Duke, 366, Moore, 890, a decree by a copyholder without a previous surrender to his use, which, though void at law, was held good under the words "limited and appointed" in the statute of 43 Elizabeth. In Roth's case (1617), Duke, 368, Hobart, 136, Moore, 88, a devise of all the testator's *capite* lands to a charity was, though void at law, held within the *relief* of the statute. To the same effect as the former cases was Christ's Church Hospital v. Hawes, Duke, 370, decided in 1670. In Stoddard's case (1622), Duke, 373, a nuncupative will of a rent charge out of lands in favour of a charity was held good by the words " or limitation and appointment," being good as a limitation or appointment, though void as a gift. To the same effect was Hillom's case, Duke, 375, (1629) and Worford Parish v. Parkhurst (1639), Duke, 378. In Platte v. St. John's College, Duke, 375, the devise of a remainder was held good, without a particular *estate* to support it. " This defect being made good," said Lord Keeper Coventry, " by the statute, by a benign and favourable interpretation for maintenance of charity, as in other cases upon statutes for piety and charity." After the statute of *frauds* and *perjuries*, 29 Charles 2, ch. 3, which went into effect in 1677, wills of *lands* in favour of charities were required to be in the

form prescribed by that statute in other wills of lands. The first case subsequent to that Act was Tay v. Slaughter, (1690), Precedents in Chancery, 16, before the Lords Commissioners, the great seal being then in commission. That was a devise of lands by a tenant in tail to a charity, without having first levied a fine or suffered a common recovery. And this will was held an effective transfer of the land to the charity against the remainder-man, who impeached it after the estate tail was spent; although this remainder vested in an infant. In the Attorney-General v. Rye (1703), 2 Vernon, 453, the Lord Keeper Wright sustained a devise by a tenant in tail in favour of a charity against the issue in tail, saying, " that the intent of the act of the Queen for charitable uses, was to make the disposition of the party as free and easy as his mind, and not to oblige him to the observance of *forms of conveyance*, either by lease, release, or common recovery or fine, &c." The case of the Attorney-General v. Barnes (1707), 2 Vernon, 597, Precedents in Chancery, 270, was a devise of lands in favour of a charity, by a will not executed in the form required by the statute of frauds. This, however, Lord Cooper ruled to be bad, the terms of the statute being absolute and extending to all devises of lands. The case of Jenna v. Harper, 1 Salk. 163, 1 P. Wm. 247, decided in 1714 by Lord Chancellor Harcourt, arose from a parol devise of a rent issuing out of lands to a charity. According to Salkeld's report of this case, Lord Harcourt said that "the statute of 43 Elizabeth, which favoured appointments to charities, was repealed *pro tanto* by the statute of frauds." The decision here was against the devise, although made in 1651, and consequently before the passage of the statute of frauds. In the case of the Attorney-General v. Burdett (1717), 2 Vernon, 755, the Master of the Rolls, Sir Joseph Jekyll, ruled that an appointment to a charity, made by a tenant in tail, would bind the reversioner in fee; " the statute of charitable uses supplying ALL defects of such assurances." In the same year, 1717, arose the case of Pigott v. Penrice, Precedents in Chancery, 471, Gilbert's Eq. Cases, 137–8, a case peculiarly applicable to more than one feature of the present. There A. made a *settlement* of lands, with a power of revocation by writing to be executed under hand and seal in the presence of three witnesses, not being menial servants; and in her illness, by letter desired a deed of revocation to be prepared, but died before it was done, having by will given part of these lands to charitable uses. This was decreed at the Rolls to be a good revocation as to the charities, but void as to the

other devisees. From this decree an appeal was taken to the Lord Chancellor by the general devisees. As to the charities, the decree at the Rolls was acquiesced in, being probably considered too clearly correct to justify further litigation in that particular. The decision at the Rolls was, however, confirmed by Lord Cooper. The effect of this decision is, that although equity will aid a defective appointment to a charity, it will not aid the same defective appointment so made to another appointee. This decision has ever since been received as law, and was the ruling decision cited and relied upon in the recent case of Innes v. Sayer, in which aid was given to an appointment in favour of a charity quite as defectively executed as that before this Court. The case next in order is The Attorney-General v. Sawtell, 2 Atk. 497. There the testator had surrendered his copyhold lands to the use of his will. A scrivener had orders to engross this will, but the testator being *in extremis*, the rough draft, consisting of eleven sheets, was brought to him, and he signed only the two first, but died before he could sign the rest. Lord Chancellor Hardwicke held this to be a good appointment of the copyhold to a charity *according to the statute of* 43 *Elizabeth of charitable uses.* This case is, however, in entire harmony with the statute of frauds. Because it is settled doctrine that wills of copyholds stand clear of the statute of frauds as well as of the statute of wills. The lands pass by the surrender, and the will has no specific operation under the statute of wills but as a mere declaration of an use. See Roberts on Wills, chapter 1, § 3, p. 37.

It is true that this course of decisions met from time to time with resistance. Judges and text-writers have expressed their disapprobation of what they have termed its "alarming extravagance;" of "the anomalies introduced by it, irreconcilable with any sound principle of judicial interpretation or proper exercise of judicial authority;" of deduction being drawn from the statute of charitable uses "which the makers of that statute never thought of;" but still these decisions have held their places in the law of charities, except where superseded by positive statute. Lord Chancellor Sugden, in The Incorporated Society v. Richards, 1 Drury & Warren, 300, after questioning their original propriety, concluded with saying "that these cases have been too long the law of the land, and it is now too late to disturb them." See Shelford on Mortmain, ch. 5, § 1, p. 514; Attorney-General v. Barnes, 2 Vernon, 597; Precedents in Chancery, 270; and Incorporated Society v. Richards, supra.

The growing dissatisfaction with them, however, led to the passage

of the Act of 9 George 2, ch. 36, which went into effect on the 24th of June, 1736, and which corrected most of the evils supposed to have flown from the too liberal course of decisions made in equity in favour of charitable bequests, grants, and devises.

This statute has been said to be improperly called a statute of mortmain; being truly a statute to restrain gifts to charitable uses: Corbyn v. French, 4 Vesey, Jr. 427, per Aden, Master of the Rolls. It makes void all gifts of lands, or moneys, or personal property, to be laid out in the purchase of lands, for the benefit of any charitable use whatsoever, unless made by deed, sealed and delivered in the presence of two witnesses, twelve months before the death of the donor or grantor, and enrolled in the Court of Chancery within six months after execution, &c.; and unless the same be made to take effect in possession for the charitable uses intended immediately, and be without any power of revocation, reservation, trust, limitation, or agreement whatsoever, for the benefit of the donor or grantor, or *any* person or persons claiming under him." The statute, and the numerous decisions under it, which fully carry out the policy of its framers, have heretofore foiled every ingenious attempt made to evade its provisions, and have rendered comparatively harmless the doctrines extended, if not introduced, by the statute of 43 Eliz., leaving them only in vigour as to appointments of pure personalty, to be continued as such. Under this statute a bequest of moneys to arise from the sale of lands is void. This was decided by Lord Hardwicke, in The Attorney-General v. Weymouth, Ambler, 201. To the same effect is Parce v. The Archbishop of Canterbury, 14 Vesey, 360; Waste v. Webb, 6 Madd. 73. Hence the charitable bequests in the will before us would at this time be utterly void in England as to lands, though the power were otherwise ever so perfectly executed.

The statute of 9 George 2 never was in force in this state, and of consequence the law of charitable uses with us, stands unaffected by it. That the law of charitable uses has always formed part of our civil code, is not now an open question. It is true that the statute of 43 Eliz. as a statute never had an existence in this state, and simply because its peculiar machinery was wholly inapplicable to our colonial institutions. But its conservative provisions have been in force here by common usage and constitutional recognition, and not only these, but the more extensive range of charitable uses which chancery supported before that statute and beyond it: Zimmerman v. Anders, 6 W. & S. 218; Witman v. Lex, 17 S. & R. 88; M'Give v. Aaron, 1 Penn. Rep. 49; Mayor v. Wills, 3

Rawle, 170; Methodist Church *v.* Remington, 1 Watts, 218; Ex parte Cassel, 3 Watts, 440; Martin *v.* M'Cord, 5 Watts, 494. How far we have adopted the English doctrines of charitable uses, whether as they existed anterior to 43 Eliz. or as they have been developed since that statute, would be a difficult question to answer, and at the same time an unnecessary one to be responded to. As was truly said in Witman *v.* Lex, "This must be a matter of gradual developement, according to the exigency of the cases that may arise." Now, although no case has arisen in our Courts, in which the exact question of the aid given by equity to a power defectively executed in favour of a charity, has been adjudicated upon, yet the analogies of the decided cases afford sufficient reason for us to say that this is one of the conservative doctrines flowing from or expanded by the statute of charitable uses, which forms part of our system of the law of charities. The aid so given to an instrument of conveyance merely defective in form, is certainly one of the least obnoxious features of the peculiar doctrine of equity in regard to charities. It has so far recommended itself to favour in England, as to have led to its legislative adoption in their statute of wills, as to *all* cases of appointments, defective in such a point as that which affects the one before us. The cases cited, in which our Courts have applied the principles adopted by chancery in regard to charitable donations, have been infinitely more urgent in their features than the present, which is simply the case of a power executed by a will made in perfect conformity with our statute of wills, but in which a formula is omitted, not required by that statute, though required by the power authorizing the appointment by will. In such a case, it is certain that at this day in England equity would aid this defect in favour of a charity: the will being in other respects made according to their statute of wills, and the bequest being consistent with the statute of 9 Geo. 2. In this case the will is executed in conformity with our statute of wills, and its bequests are to such charities as have always been sustained in this Commonwealth. Our Courts, therefore, ought not in such a case to hesitate in applying to any formal defect in the execution of a power by such a will in favour of charity, the aid extended by equity for centuries to similar defects.

Another question has presented itself in this case, of considerable gravity, in respect to the parties to whom the life and contingent bequests of this estate enure, before it finally reaches the charities. Suppose that equity will supply the defect in this appointment in

aid of the ultimate bequest to the charities : will it do so in reference to the previous life and contingent bequests ?

Two of the cases cited seem to intimate that the aid given by equity to defective assurances in favour of charities, is not extended to associated devises or bequests to individuals.   In Platt *v.* St. John's College, Sawbridge, Duke, 379, a tenant, seised *in tail of* copyhold land, made a surrender to the uses of his will, and suffered a recovery, in which no judgment was given against the vouchee, and afterwards devised the land by his will to his wife for life, with remainder to a charity.   The Lord Keeper Littleton decided that " the recovery was void at law to cut off the estate-tail, *and as to* the wife to whom the land was devised for life, the heirs had liberty given them to evict them; but as to the college, and to the remainder limited to them, the devise was good by the statute of 43 Eliz. of charitable uses, for there was a gift and limitation of the land to a charitable use, which shall not be avoided for want of a circumstance at law to make it good."   In the case of Pigott *v.* Penrice, already cited, which is a leading case as to the aid granted by equity to defective executions of powers in favour of charities, the power of revocation reserved by the grantor was adjudged well executed as to the charity, but void as to the other appointees, because not executed in the manner required by the settlement.   In this case the power of revocation was also reserved by the settler herself, in the deed of settlement.

It is not, however, necessary now to rule this point, and which we do not intend to do.   In holding the appointment to the executors of this will as trustees, good as respects the charities, we hold the estate appointed to be sufficiently vested in them to carry out all the lawful trusts of the will.   If there exists any particular class of *cestui que trusts,* to whom the bounty of the testatrix cannot enure by reason of incurable defects in the donation to them, then the heirs-at-law of Margaret Pepper can make any reclamation they may legally have against that part or interest in the fund derived from the sale of the land, when in the hands of the trustees for appropriation, according to the terms of the trust.   At that time the doubt that exists in this part of the case may be solved, and certainly we would rather desire that the appointment should be held good *in toto,* than partially good and partially bad; good as to the charity, but bad as to the other donees.

It follows, from the conclusions we have arrived at, that the application by the heirs-at-law in opposition to the executors and appoint-

ees in trust of Margaret Pepper, to appoint a trustee in the place of George Pepper, deceased, should be refused, and it is accordingly refused.