## Trust Under Deed of Levering et al.

*Trust deed—Power of appointment by will or writing in nature thereof—Exercising power in manner indicated in instrument creating power — Attempt to appoint by deed.*

1. Where a deed of trust creates a power of appointment and directs that the appointment shall be made by a last will and testament, "or any writing in the nature thereof," a deed by the donee during her lifetime is not a valid exercise of the power.

2. The words "by will, or any writing in the nature thereof," mean a writing, if not with the formalities requisite for a will, at least containing a disposition of property to take effect at the death of the donee, and a deed is not such a writing.

3. A power to be executed by will cannot be executed by an act to take effect in the donee's lifetime.

4. A recital or reference to the deed of trust does not impart testamentary character to the deed.

*Evidence—Presumption—Death—Absence for seven years.*

5. In the absence of proof that a person was confronted with any peril that might reasonably be expected to destroy his life, or that he was in any particular or immediate danger, it will be presumed that he lived until the expiration of seven years from the time he was last heard of and that his death occurred at the end of the seventh year.

Petition for distribution. C. P. No. 5, Phila. Co., June T., 1905, No. 1436.

*W. B. Heidinger*, for plaintiff; *C. S. Schofield*, for defendants.

MONAGHAN, J., Feb. 14, 1927.—Mark Singer, the owner in fee of premises No. 4452 Silverwood Street, Philadelphia, died intestate on Dec. 19, 1887. By deed of trust dated March 3, 1888, his widow, Eliza M. Singer, and his only

surviving children and heirs-at-law, Amanda M. Levering, Emma E. Singer and George W. Singer, granted and conveyed the property to John S. Janes McConnell in trust, *inter alia*, to permit the widow, Eliza, to use, occupy and enjoy the same during her life; upon her death, for the same uses and purposes for George, the son, for life; and upon his death to convey the property in fee to Amanda and Emma, the daughters. If either of the daughters should die in the lifetime of the widow or of the son, the property was to be sold; and, after the deduction of the necessary and proper charges, one-half of the proceeds thereof was to be paid to the surviving daughter and the other one-half was to be paid in such amounts and to such person or persons as the daughter who had died "shall direct, limit and appoint by her last will and testament, or any writing in the nature thereof," and in default of such direction, limitation and appointment, then to pay the same "to the right heirs" of the one so dying, "in the amounts to which they would be entitled" under the intestate laws of this State. In the event of the death of both daughters during the lifetime of the mother and of the brother, the property was to be sold and the proceeds paid to such person or persons and in such amounts as the daughters, Amanda and Emma, should "by their last wills and testaments, or other writings in the nature thereof, direct, limit and appoint; and in default of such direction, limitation and appointment, then to pay the same to their right heirs in the amounts to which they would be entitled under the intestate laws of this Commonwealth." By the deed of trust, it was also provided that the parties thereto, by a deed in which all joined, could sell the property at any time, and the trustees should hold and invest the proceeds for the uses and purposes of the trust.

Our interpretation of the deed of trust is that, whether one or both the daughters died before Eliza, the widow, and George, the son, the property was not to be sold until the death of the widow and son.

Emma E. Singer died on Sept. 17, 1894, leaving a will, wherein she bequeathed and devised her share or interest in the property so held in trust to her brother, George W. Singer.

Amanda M. Levering, by deed dated Jan. 11, 1898, and duly recorded, granted and conveyed all her right, title and interest in the property, in fee, to her brother George. This deed contained the recital: "Being the same premises . . . (which . . .) Eliza M. Singer, Amanda Levering, George W. Singer and Emma E. Singer, by deed dated March 3, 1888, . . . granted and conveyed to John S. Janes McConnell in trust for the life of said Eliza M. Singer, and after her death in further trust for the life of said George W. Singer; and from and after the decease of said George W. Singer, then in trust to convey the same to said Amanda Levering and Emma E. Singer, their heirs and assigns."

There is no specific reference in this deed that it was executed or delivered by Amanda in pursuance of or in execution of the power of appointment given her by the deed of trust.

Eliza M. Singer, the widow, died March 19, 1898.

Amanda Levering died Nov. 1, 1905, without leaving a will, and was survived by seven children.

George W. Singer died in 1925, leaving a will, in which he devised and bequeathed all his property in fee to the Trustees of the Philadelphia Baptist Association.

On June 14, 1925, this court appointed Martha Elizabeth McConnell trustee in place of John S. Janes McConnell, deceased. The substituted trustee sold the property on Oct. 6, 1926, and filed her account on Nov. 24, 1926.

The petition before us prays for the distribution of the balance of $2919.72, which is substantially the proceeds of the sale of the property.

It is conceded that Emma E. Singer properly exercised, by will, the power of appointment given her by the deed of trust as to her share of the proceeds of the sale of the property. It follows that the executor or administrator *c. t. a.* of George W. Singer should be paid, after the deduction of $300 as counsel fee to Willis S. Heidinger, attorney for the trustee, and the costs attendant upon the filing of the account and of the audit, one-half of the fund remaining for distribution.

A controversy has arisen as to the persons to whom the other one-half of the fund should be distributed. It is contended by the next of kin of Amanda Levering that her deed of 1898 was not a valid exercise of the power of appointment under the terms of the deed of trust, which directed that, in the event of the death of the two daughters during the lifetime of Eliza M. and George W. Singer, the trustee should sell the property and pay the proceeds in such amounts and to such persons as Amanda Levering and Emma Singer should "by their last wills and testaments, or other writings in the nature thereof, direct, limit and appoint; and in default thereof, then in such amounts and to such persons as would be entitled under the intestate laws of this State."

The question arises whether Amanda's deed to George was operative as an execution of her power of appointment under the deed of trust. If it was, it passed her share or interest to George, and, under his will, it should be now paid to his executor or administrator *c. t. a.* If Amanda's deed was not an exercise of her power of appointment, one-half of the net fund now on hand for distribution is payable among her "right heirs" under the intestate laws of this State. Amanda Levering, by the express terms of the deed of trust, was given power of appointment by her last will and testament, or other writing in the nature thereof. She did not leave a will. Her deed was an absolute conveyance in fee of a one-half interest in the property, to take effect immediately. Can such a deed be held to be an exercise of appointment by will or other writing in the nature thereof? We have not been referred to any case in which this question has been specifically decided in this State. Our courts have uniformly held, however, that if the instrument creating the power specifies the appointment must be made in a certain manner and with certain formalities and attendant circumstances, these conditions must be strictly complied with in order to make the appointment valid: Slifer *v.* Beates, 9 S. & R. 166; Pepper's Will, 1 Parsons, 436; Hacker's Appeal, 121 Pa. 192; Price's Estate, 27 Dist. R. 561.

In other jurisdictions, the decided weight of authority sustains the proposition that a power to appoint by will cannot well be executed by deed. In 31 Cyc., 1118, the law is thus stated: "Where the execution of a power is restricted by the instrument creating it to a particular instrument, as to a deed or will, or to either of two particular instruments, the restriction must be observed, and the power cannot be validly executed in any other way."

In 21 Ruling Case Law, 793, it is said: "Where the instrument creating a power specifies the nature of the instrument by which it may be executed, as where it is to be executed by will or by deed, the power can be exercised only in the manner specified."

The authoritative text-writer, Sugden, has this to say: "A power to be executed by will cannot be executed by any act to take effect in the lifetime of the donee of the power. This was laid down by Lord Hardwicke in the case of Whaley *v.* Drummond. He said that where a power is given to charge

an estate by will, the person having the power cannot execute it by any act in his lifetime:" 2 Sugden on Powers, 210.

Chief Justice Gibson, in McConkey's Appeal, 13 Pa. 258, said: "That Whaley v. Drummond . . . settled it, that a power to be executed by will cannot be executed by an act to take effect in the donee's lifetime."

The reasoning upon which these conclusions have been based is that the donee with power to appoint by will has her lifetime in which to determine the object of her bounty; that by confining her to disposition of the property by will, which will be ambulatory until her death, she would operate more beneficially for herself by attracting respect and affection for her to the end of her life; and if she makes a deed to take effect at once, she deprives herself of her freedom of choice for the remainder of her life, and by so doing defeats the intent of the donor. See opinions of Lord Ellenborough, in Doe v. Thorley, 10 East, 443, and Lord Eldon, in Reid v. Shergold, 10 Vesey, 380.

In the case before us it is true the power could well be executed by will "or other writing in the nature thereof." This plainly means a writing, if not with the formalities requisite for a will, at least containing a disposition of property to take effect at the death of the donee. Such a disposition is not made, nor is an intention to do so stated in, nor can it be implied from anything contained in the deed of Amanda Levering. Her deed purports to convey and vest whatever interest she had in the property in the grantee in præsenti. The instrument is barren of the slightest suggestion of a testamentary disposition of property and cannot be regarded as a will or as a writing in the nature thereof without doing extreme violence to the fundamental distinction between a deed and a will.

Nor can Mrs. Levering's deed be sustained as an execution of the power on the theory that it would otherwise be a nullity. She did have an interest in the property which could be conveyed; that is, she had an expectancy— a right to one-half of the proceeds of the sale of the property if she survived the life-tenants. Had she survived the life-tenants, the deed might operate as a transfer of that interest, or might be sustained as having been made to accomplish that result.

Counsel for the executor c. t. a. of George W. Singer has argued that the reference by way of recital of the deed of trust, in Amanda's deed to George, shows that Amanda intended to execute the power of appointment. If the deed of Amanda was testamentary in character, the recital might be of weight in determining that she intended to execute her power of appointment; but as the deed of trust directed the appointment should be by will or other writing in the nature thereof, and as her deed to George was a conveyance in præsenti, the mere recital or reference to the deed of trust would not impart any testamentary character to her deed. It follows from what we have already said that Amanda Levering's deed to George was not a valid exercise of her power of appointment under the terms of the deed of trust, and that one-half of the net fund for distribution should be paid to her heirs in the amounts and proportions provided by the intestate law.

Amanda Levering had seven children, Mark, George, James, Allen and Caroline, who are still living; Amanda, who died intestate, leaving a husband and two minor children, who are still living; and William, her seventh child, who was last heard of in 1903; his wife, Lena, and a son and daughter are still living.

It has been urged that William Levering died in 1903, and, in support of this contention, John C. Levering was called and testified that in 1903 his father, William, was living with his family in Bethlehem, Pennsylvania, and

Trust Under Deed of Levering et al.

was working there as an employee of the New Jersey Central Railroad. Sometime in that year he left his home to go to Texas, and his family was informed that he was there employed by the Southern Pacific Railroad Company. After he had been eight months in Texas, the family received a letter that the father had been injured, having been thrown out of a car window by strikers, and that he was in a hospital in Houston, Texas. A member of the family then wrote to the Southern Pacific Railroad Company, and, in reply, received a communication to the effect that the railroad company would furnish the father free transportation to his home. Upon inquiry made three years later, the company informed the Levering family that the "pass" had never been used. The last letter received by the family from the father was while he was in the hospital at Houston. In this letter he enclosed $20 to his wife and stated he was coming home. This was in 1903. The family has never heard of him since that time.

We have no hesitancy in finding that William Levering is now dead, the testimony showing that he has not been seen or heard of since 1903. In the absence of evidence as to the specific date when he died, the court will presume that he died at the end of the seven years' period; that is, in 1910. This is subsequent to the date of the death of Amanda Levering.

If we find that the death of William Levering took place in 1910, one-seventh of Amanda's interest in the fund would pass to his widow and his children in the proportions prescribed by the intestate law. We are asked, however, to say there is sufficient evidence to sustain a finding that William Levering died in 1903. If he died in 1903, his widow would not be entitled to any share of the fund now before us for distribution. Is the evidence sufficient to warrant a finding that William Levering died in 1903? The fact that there is a legal presumption of death after seven years' absence does not prevent an inference of death from absence of a shorter period, where there are other circumstances which tend to force the conviction that death must have occurred, as that the person has encountered, or probably encountered, such perils as might reasonably be expected to destroy human life and has been so situated that, according to the ordinary course of things, he must have been heard of if he had survived: 13 Cyc., 299.

In Burr v. Sim, 4 Wharton, 150, Chief Justice Gibson said in this connection: ". . . The presumption of death, as a limitation of the presumption of life, must be taken to run exclusively from the termination of the prescribed period (seven years from the time when the individual was last heard of); so that the person must be taken to have then been dead and not before; . . . it is undoubtedly true that additional circumstances of probability may justify a presumption that the death was still sooner; but . . . the jury (cannot) presume the death to have been at an intermediate period, unless we discover in the case at least a spark of evidence that the individual was at some particular date in contact with specific peril as a circumstance to quicken the operation of time. . . . To accelerate the presumption from time, or, more properly, to turn it from an artificial into a natural one, it is necessary to bring the person within the range of a particular and an immediate danger." See, also, Petition of Mutual Benefit Co., 174 Pa. 1; Fanning v. Equitable Life Assur. Society, 264 Pa. 333; Groner v. Knights of Maccabees, 265 Pa. 129; Condron v. Phila. & Reading C. & I. Co., 78 Pa. Superior Ct. 133.

Guided by these rules, we find the testimony insufficient to warrant a finding that William Levering died in 1903 or at any time short of the seven years' period. The evidence is extremely vague and consists almost entirely of hearsay statements made by one witness. However, if we take as actually

true the statements of the witness, that William Levering was injured and in a hospital in Texas in 1903, we have no testimony as to the real nature of his injury, whether it was trivial or severe; nor does it appear that he was confronted with any peril that might reasonably be expected to destroy his life, or that he was in any particular or immediate danger. On the other hand, it does appear that he contemplated coming home in 1903, and that he had received transportation for that purpose. This would indicate that he was sufficiently well to undertake the journey from Texas to Pennsylvania. In the final analysis, all the testimony discloses is the unexplained absence of William Levering since 1903. So we must presume that he lived until the expiration of seven years from that time, and that his death occurred in 1910.

The widow and two children of William Levering are, therefore, entitled to share in one-seventh of one-half of the net fund for distribution in the proportions prescribed by the intestate law.

Counsel will prepare and present a form of decree in accordance with this opinion.