The opinion of the Court was delivered by
Tilghman C. J.
Both plaintiff and defendant claimed as Connecticut settlers ; and .the question is, whether, between them, the certificate of the commissioners is conclusive evidence of title. In construing the acts of assembly under which the commissioners acted, the Court will take notice of certain matters of public notoriety, which led to the making of these acts. In the latter end of the year 1768, or bé *286 ginning of 1769, a number of persons from Connecticut entered into the state of Pennsylvania, claiming, by virtue of a deed from the Indians, certain lands, which, as they alleged, were within the boundaries of the state of Connecticut. The government of Pennsylvania endeavoured to expel them, and was resisted with force ; riots and bloodshed ensued, and the ground was contested, until, at the request of the continental congress, both parties agreed to remain at peace, until the war with England should be terminated. During that war, the Connecticut settlers fought bravely, and suffered great loss, from the common enemy. At length Pennsylvania and Connecticut submitted their rights to the decision of a court of commissioners appointed by Congress, according to the articles of confederation, and in the month of December, 1782, that Court, sitting at Trenton in New Jersey, made a decree in favour of Pennsylvania. From that time, to the year 1799, the legislature of Pennsylvania, fluctuating between a sense of justice, which impelled them to return the possession of the disputed lands to their own citizens, and a sentiment of generosity and compassion, which induced them to shew some favour to men who had, perhaps ignorantly, intruded into a country, where they had spent their labour and shed their blood in the common cause, acted a wavering-unsteady part. At one time, they were too severe; at another, perhaps too lenient. Meanwhile, the Connecticut settlers kept the possession. But conscious of the weakness of their title, they were afraid to make valuable improvements. In this situation, the county was of little value to either party, and both were weary of a contest, to which they could perceive no end. This state of mind was favourable to an accommodation, and the legislature wisely took advantage of it. The act of 4th April, 1799, was passed ; the plan of which was, to offer a reasonable compensation in money, to such Pennsylvania claimants as were willing to release their rights; in order that the Commonwealth having thus regained the title, might confirm the estates of the Connecticut settlers at a moderate price. For this purpose commissioners were to be appointed, whose duty it would be to value the lands; and as it would sometimes happen, that there would be disputes between the Connecticut settlers, the commissioners were to decide between them, according to their oxun customs, in a summary way; provided, that if either party chose, rather to *287 have his cause decided in the Court of Common Pleas, he might elect to have it so done. It is evident, that the object of this law was, to restore peace to the country as speedily as possible; and it should be construed liberally, with that view. The Connecticut titles were sui generis, to be traced in the books of the Susquehannah Company; not calculated to stand the tests of a strict common law investigation, and therefore very proper to be decided by commissioners. It was doing them a favour, to afford them that mode of decision, and no appeal being provided for by the law, it must be concluded, that the judgment of the commissioners was intended to be final. But, it is contended, that in the case before us, the commissioners had no jurisdiction, because the land was not occupied by a Connecticut settler, prior to the decree of Trenton. The words of the law, (act 4th April, 1799, sect. 5.) are these :—“ It shall be the duty of the said commissioners also, to ascertain all the rights or lots within the said seventeen townships, which were occupied or acquiredj by Connecticut claimants who were actually settlers there, at or before the time of the decree at Trenton, and which rights or lots were particularly assigned to the said settlers, prior to the said decree, agreeably to the regulations then in force among them.” Now, in the case before us, the commissioners decided, that the land was occupied and acquired by a Connecticut claimant, an actual settler there before the decree of Trenton, and was particularly assigned to such actual settler prior to the said decree, agreeably to the regulations then in force among such settlers. This decision is in the very words of the act of assembly, except, that the act has the words, who were actually settlers there, and the expressions .of the commissioners an actual settler there. This variation is of no importance, because a man cannot be an actual settler, without being actually a settler. According to the decision of the commissiQners then they had jurisdiction; and the defendants who claim under David Dailey are estopped from controverting it," because when he entered his claim as a Connecticut settler, he asserted, by implication, that the land was occupied or acquired by a Connecticut claimant, who was an actual settler at or before the time of the decree of Trenton. Let it be observed, that I give no opinion, (for the case does not require it,) whether it was necessary, that there should have been an actual settler *288 on this very tract of land, át or before the decree of Trenton, or whether it would not have been sufficient, if the land had been owned by one who was an actual settler within the seventeen townships. I say the case does not require this point to be now decided, because, be the construction what it may, the commissioners have made their decision in the words of the law, and the defendants are estopped from denying their jurisdiction. Taking the jurisdiction then for granted, I have already given some reasons for thinking, that the decision should be conclusive. Their power to decide is to be found in the 11th section of the act of 4th April., 1799. It is there enacted, “ that in case of dispute between the Connecticut claimants, they may elect to have the same decided by the said commissioners, or appeal, before such decision, to the Court of Common Pleas of the proper county, and a certificate from the clerk of such commissioners, or from the prothonotary of such Court of Common Pleas, before which tribunal such decision may be had, certifying in whose favour the same is adjudged, shall be good evidence to obtain a patent from the proper office aforesaid.” No mention is made of an appeal from the commissioners in any part of the law, nor of any tribunal .in which the cause can be re-heard or brought again into question. The act of 4th April, 1799, and its supplements, form one system of legislation on the same subject. In the supplement óf 6th April, 1802, there is a provision which operates powerfully in favour of the conclusive nature of a decision of the commissioners. By the 10th section of that supplement, it is made the duty of the commissioners to demand and “ receive of and from each Connecticut settler and claimant applying for a certificate tinder the act of 4th April, 1799, or the said supplement, any deed and document of title under the Susquehanna Company relating to the lands required to be certified, which may be in the power or possession of such Connecticut claimant or settler, previous to the issuing of any certificate for such lands, which deeds and documents shall be transmitted by the said commissioners to the secretary of the land office, together with all other papers relating to the said commission, when required by the Governor.” It cannot be supposed, that it was intended to disarm a man of his title papers, before the suit was finally decided. In case of a dispute between a Connecticut and a Pennsylvania claimant, the commissioners *289 were not authorised to decide ; but in such case, the possession of the papers proving the Connecticut title, would be of little use. A case a good deal analogous to the present, existed in that part of the state which borders on Virginia, When Pennsylvania and Virginia entered into a compact for the settlement of their boundaries, it was agreed, that the first grant made by either state, within the disputed territory, should be confirmed. Virginia appointed commissioners to settle disputes between her own people • and it has been repeatedly decided by our Courts, that in disputes between Virginians, the certificate of the Virginia commissioners was conclusive; but between a Virginian and a Pennsylvanian, it was only prima facie evidence. The same principle may be applied to the seventeen townships in Luzerne county. For the decisions of the Judges of the Supreme Court on the Virginia cases, I refer to Smith's lessee v. Browne, and Hyde's lessee v. Torrence, 2 Sm. L. 131, 132, notes.
But it has been urged on the part of the defendants, that the evidence offered by them was proper, to shew that David Dailey acquired title as a settler under Pennsylvania. But here again the defendants are estopped. They shall not deny the declaration of their father, that he claimed as a •Connecticut settler, and so claiming, he could acquire no title under Pennsylvania. It would be monstrous, if one could acquire title under the state, at the very moment in which he was violating her laws, and by the very act which was in direct violation of them. Neither plaintiff nor defendants have a vestige of legal title before the act of 4th April, 1799, because, before that period their possession was considered as tortious. Neither has any title, but from the bounty of the Commonwealth, and the legislature had a right to dispense that bounty on their own terms. This is an additional reason, why neither has just cause of complaint, if, for the sake of restoring quiet to the country it was thought proper to oblige them to have their disputes settled speedily, and without appt-al. On full consideration, I am of opinion, that between Connecticut claimants the decision of the commissioners is conclusive.
There is another bill of exceptions on the record. The application of Zebulon Marcey was for 300 acres, but the commissioners gave him 367 acres. The defendant’s counsel prayed the Court to instruct the jury, that the plaintiff *290 could not recover more’ than 300 acres; but the Court was of opinion, that he'might recover the whole 367" acres. The Court was right. The act of 6th April, 1802, sect. 9, directs the commissioners to survey and certify the whole of each tract claimed by a Connecticut claimant, who shall establish his title thereto. So that if upon actual survey, the tract was found to contain more or less than the claimant supposed, that was immaterial; the commissioners were to ascertain the quantity, and give the claimant the whole tract to which he had shewn title. I am, therefore, of opinion, that the decisions of the Court of Common Pleas, were in all respects right, and their judgment should be affirmed.
Judgment affirmed.