# Bird *against* Smith.

The right to navigate a public river, transverse or otherwise, is susceptible of exclusive appropriation only by grant from the public to whom it belongs; and we have, consequently, no such thing as a ferry by prescriptive right, or presumptive grant of exclusive navigation from length of time. But the owners of the shores have the power to control the subservient and indispensable right of embarkation and landing, even at the *terminus* of a public road.

The grant of a privilege of landing and embarking ferry boats upon the land of another, may be presumed from the use of it, for a long time. And the ordinary and occasional use of it, would be such an occupation of the privilege as would be noted to a purchaser of the land, out of which the privilege was granted.

The grant of a privilege to land and embark ferry boats upon the land of another, which was held by a Connecticut title, is not affected by a grant of that title from Pennsylvania, which did not extinguish, but confirm the Connecticut title.

The lessor of an easement is a competent witness for the lessee in an action brought against a stranger for a disturbance of it.

ERROR to the common pleas of *Luzerne* county.

Amos Y. Smith against Abraham Bird. This was an action on tl e case to recover damages for disturbing the plaintiff's right uninterruptedly to navigate across the Susquehanna river at his ancient ferry. The plaintiff was a lessee of Lucy Jenkins, and on the trial the lessor was offered as a witness by the plaintiff. The defendant objected to her competency, but the court overruled the objection and sealed a bill of exception.

The important question which arose in the cause, arose from exceptions to the opinion of the court, which is here inserted as a clear statement of the facts, and lucid exposition of the law, as delivered to the jury:

*Jessup*, president.—The plaintiff in this case claims to be the owner of the exclusive right of ferry across the Susquehanna, in this county, usually known as Jenkins' or Pittston ferry. He alleges that the defendant has used this ferry, and thereby deprived him of ferriage which he was entitled to receive. The right of the defendant to start from and land on the east side of the river, is not controverted in this case. The only controversy respects the west side of the river, and the right of crossing and landing there.

It appears by the evidence, that about forty-six years ago, Stephen and Thomas Jenkins, who were brothers, came to Wyoming Valley, and settled upon the land upon the west side of the river. That about that time, Thomas Jenkins established a ferry; the landing of this ferry on the west side of the river in an ordinary pitch of water, was upon the road which he had opened upon his own land, between him and his brother Stephen. Thomas, it ap-

pears, owned all the boats, and did all the ferrying for some time, landing at low water and sometimes at very high water, upon Stephen's land.

It appears that prior to 1806 or 1807, Stephen had, at times, claimed to have a right to ferry across the river, but about that time a reference of this claim and other matters, was had between the brothers, and from that time Stephen did not make any claim to the ferry; Thomas continued to occupy the ferry until his death, which occurred in 1812. By his will, dated the 23d of January 1812, he devised the profits of the ferry to his wife, Lucy, during her widowhood, and under the will she occupied it until the 26th of March 1837, when she leased it to the plaintiff.

There are many other facts detailed in the evidence of the plaintiff which it is not now deemed necessary to recapitulate, further than to state, that prior to the commencement of this suit, the defendant appears, by the evidence of Wayne Swetland, to have used this ferry in transporting one man and horse across, and that the usual price of ferriage is twelve and a half cents. Until this act of the defendant, there does not appear by the evidence to have been any attempt to interrupt the enjoyment of the ferry by any person since its first establishment, about forty-six years ago. During all that time, Thomas Jenkins, his widow, and the plaintiff, have had the continued and uninterrupted enjoyment of this ferry. The defendant claims to have the right of ferry on the ground that he is the tenant of Elam Stockbridge, who owns the land on the east side of the river, and who also owns the landing upon the west side, by virtue of a conveyance from Peter Polen, who holds by deed dated the 15th day of November 1830, the right of Stephen Jenkins.

Under the facts in this case, a number of legal questions are raised by the counsel of both parties, upon which the court is desired to charge the jury. And first, the plaintiff's counsel ask the court to charge the jury, "that if they believe from the evidence, that the plaintiff and those under whom he claims, have exclusively enjoyed the ferry and the right of landing on Stephen Jenkins', now Elam Stockbridge's land, they ought to presume the grant of the right." To this the court answer, that the uninterrupted enjoyment of the right of landing upon the land of Stephen Jenkins, for twenty-one years and more, is sufficient to warrant the jury in presuming a grant of such right, and they ought to presume a grant, but they can only presume a grant of that which has been so enjoyed, and should not extend the privilege beyond what has been the actual enjoyment. In this case, if the jury believe the evidence to be as stated in the point, that it has been an exclusive enjoyment, then they ought to presume a grant of such exclusive right, but if it has been an enjoyment of the right merely without interruption, then the grant should be presumed to be of that right only. There is an important difference between an exclusive right and an unin-

terrupted right. In the first case, neither Stephen Jenkins, nor any persons under him, could use the landing, although they owned the land. In the latter, they might use it, if in so doing they did not hinder or prevent the plaintiff in the enjoyment of his right. The plaintiff's counsel further asks the court to charge the jury, 2. That the open and notorious possession and enjoyment of the ferry by the plaintiff or those under whom he claims, is sufficient and legal notice to Elam Stockbridge, of their right or claim; and not only to him, but also to Peter Polen.

The court answer to this that, as a general rule, possession of land is notice that those in possession have a claim upon the land, and whoever purchases will be bound by their claim as fully as if he had actual notice; and in this case the possession and use of the ferry would be, to those who purchased of Stephen Jenkins, notice of the right of Thomas Jenkins to land his boats, when the state of the waters required it, upon the land of Stephen; but would not be notice of the right to exclude Stephen from landing on his own land. As in presuming a grant, the jury will confine it to the right actually enjoyed, so the notice will be limited, as to *bona fide* purchasers, without actual notice by the extent of the possession actually had by the plaintiff and those under whom he claims. The evidence appears chiefly to show that Thomas and those claiming under him only used the land of Stephen at certain stages of the water.

The presumption of grant and of the notice by possession then would be of the right to use it when the state of the waters required. The plaintiff also contends that, having been in the possession and enjoyment of this ferry for more than twenty-one years, his title to it is complete by the operation of the statute of limitations. This the court thinks is not correct, for the mere enjoyment of an easement, such as the right of landing, is not a subject of the statute of limitations. It is not exclusive nor adverse.

The defendant contends that there can be no exclusive right of ferry over the Susquehanna except by special act of the legislature; that the river being a public highway is open to all the citizens of the state and others who may wish to pass along it, and that the use of it can never give any exclusive right. The court answers to this that it is true the Susquehanna river is a public highway, but the term "ferry" includes not only the common right of all citizens to use the waters of the river, but also the right of landing upon both banks. Now, the *riparian* owners are bounded by the low water mark, and he who owns the land owns also the right of landing upon it, and although there may be no exclusive right to the use of the waters of the river, yet there may be an exclusive right to the land on both sides down to low water mark, and so an exclusive right to a ferry.

It appears in the evidence that Thomas and Stephen Jenkins held their lands under Connecticut titles, and that, on the 1st of

January 1808, a certificate was granted to Stephen for 141 acres and 128 perches of land, which covers the land upon which the boats were accustomed to land. The title of Stephen was afterwards vested in Peter Polen, and he conveyed a small piece including a road with a right of landing upon his lands to Elam Stockbridge, the landlord of the defendant.

The defendant's counsel insist and so ask the court to charge the jury, that whatever grant of this right of ferry might have been made by Stephen to Thomas prior to the granting of the certificate, not being reserved therein, the certificate is conclusive against the right of Thomas.

The court think that, as between Connecticut claimants to the same lands, the certificate is conclusive, but that this principle does not apply to a mere easement growing out of the land, the possession and enjoyment of which is not against the title of the owner of land, but is held under that title.

The defendant claims as a *bona fide* purchaser without notice of any right of the plaintiff or those under whom he claims, and asks the court to charge you, that if you believe there was a parol grant of this right, but no actual notice of such grant given to him, the plaintiff cannot recover.

The defendant, or those under whom he claims, was entitled to either actual notice, or to such notice as possession of the property would give, of his rights. He being the owner of the land could not be divested as to the notice arising from possession. The court have given you their opinion upon that subject, in answer to a point proposed by the plaintiff, and whether Peter Polen had actual notice prior to the purchase, is matter of fact for the jury. If he had, it would be binding upon him.

The plaintiff in this case claims damages for using the ferry to which he has exclusive right, and if he be entitled to recover, it will be only for such damages as he sustained at the commencement of this suit. It is not contended by him, nor is there any evidence that he was interrupted in his use of the ferry, that his right of landing was either denied or hindered. Indeed the question appears to be reduced to this: Was the plaintiff sole and exclusive owner of this right of ferry?—if so, what amount of ferriage had the defendant, by using this right, prevented him from receiving?

Unless you are satisfied from the evidence, of his *exclusive* right, (the defendant having his own land, as was stated by the witnesses,) the plaintiff will not be entitled to recover.

Assignment of errors:

1. The court erred in admitting the evidence mentioned in the first bill of exceptions.

2. The court erred in admitting Eleanor or Lana Jenkins to be sworn in chief.

3. The court erred in charging the jury in answer to the first point of the plaintiff, that if they believed the evidence to be as

stated in the point, then they ought to presume a grant of an exclusive right, but if it have been an enjoyment of the right merely without interruption, then the grant should be presumed to be that right only.

4. The court erred in charging that the possession and use of the ferry would be, to those who purchased of Stephen Jenkins, notice of the right of Thomas Jenkins to land his boats, when the state of the water required it, on the land of Stephen; but would not be notice of the right to exclude Stephen from landing on his own land.

5. The court erred in deciding that the presumption of grant and of the notice by possession would be of the right to use Stephen's land when the state of the waters required it.

6. The court erred in charging the jury that an exclusive right of ferry over the Susquehanna river might be acquired by use and enjoyment.

7. The court erred in charging the jury that the certificate of Stephen Jenkins was not conclusive against Thomas, and those claiming under him, as to all prior rights in the land so certified.

8. The court erred in referring to the jury the question whether Peter Polen, prior to his purchase, had actual notice of the rights claimed under Thomas Jenkins, there being no evidence on that subject.

9. The court erred in instructing the jury that if the plaintiff was the sole or exclusive owner of this ferry, they might find damages against the defendant to the amount of the ferriage-money he had received when this suit was commenced.

*Woodward,* for plaintiff in error, cited 2 *Bin.* 475; 14 *Serg. & Rawle* 80; 3 *Smith's Laws* 358; 4 *Smith's Laws* 359, 484; 7 *Smith's Laws* 166; 16 *Serg. & Rawle* 401; 10 *Mass. Rep.* 70.

*Wright* and *Maxwell, contra,* cited 9 *Serg. & Rawle* 26; 2 *Watts* 38; 3 *Rawle* 437; 4 *Serg. & Rawle* 174; 3 *Serg. & Rawle* 132.

The opinion of the Court was delivered by

GIBSON, C. J.—Some of the points presented are comparatively unimportant; and as it is intimated that the cause has not been brought here merely for reversal, we have turned our attention particularly to those which involve principles of right.

Over the surface of a public river, riparian owners have no peculiar right. Such is the principle of Carson *v.* Blazer and Shrunk *v.* The Schuylkill Navigation Company, which seem to have put the public rights of navigation and fishery on the same footing. The right of navigation, transverse or otherwise, being enjoyed in common, is susceptible of exclusive appropriation only by grant from the public, to whom it belongs; and we have, consequently, no such

[Bird v. Smith.]

thing as a ferry by prescriptive right, or presumptive grant of exclusive navigation from length of time.   The doctrine of *nullum tempus* alone, would prevent a title drawn from a source so like the statute of limitations, from being set up against the commonwealth or her grantee.   The foundation, however, of what is nearly as effective, is the power which the owners of the shores have to control the subservient and indispensable right of embarkation and landing.  · The existence of such a power over even the *terminus* of a public road, is established by Chambers *v.* Fury and Cooper *v.* Smith, cited in the argument, as well as by Chess *v.* Manawn, 3 *Watts* 219.   The presumptive grant of an incorporeal right, sustained as it is by analogy to the statute of limitations, is founded in an adverse assertion of right, and can have no place in respect to a thing of which there can not be an adverse use; consequently, it can have no place in respect to a river which is navigated by general license, pursuant to which the individual does nothing to challenge the general right.    The principle of these presumptive grants has been carried further, in some respects, than the admitted foundation of it would seem to warrant; as in the case of ancient lights, which happen not to be an annoyance to the premises they serve to overlook, and which would rather encourage a supposition of indifference on the part of the owner than a want of right to obstruct them, inasmuch as no man is bound to enclose his ground to prevent his neighbour from looking at it.    Even as regards acts of apparent usurpation, the rule is that they must be such as in their nature carry with them an assertion of right.    Thus in Doe *v.* Reed, 5 *B. & A.* 232, the jury were not allowed to presume a conveyance after a possession of fifty years, as a creditor under a judgment; and Chief Justice Abbot added, that these presumptions had been carried too far.    Doubtless they have, where the possession or use bore nothing on its face like a pretension of title.    In point of reason, no lapse of time, bearing any proportion to the period of the statute, ought to require an exertion of a man's right merely to show that he had not parted with it, when there was nothing in the situation or possession of the property to indicate that he had; and such is the principle which ruled the case of Butz *v.* Ihrie, 2 *Rawle* 218, where it was held that the reservation of a right to swell water on the land of an adjoining owner, was not lost merely because it had not been exerted for thirty-two years.   Yet a window, which enables the occupant of it to pry into the domestic economy of his neighbour, is a nuisance whose continuance can be explained only by a want of right to abate it.    Perhaps the apparent difficulty of reducing all the decisions on this head to principles of reason, arises from a tendency in the judicial mind to generalize, without stopping to dispose of specific differences.    The rights of the parties here, however, are determinable by the plaintiff's occupancy, not of the stream, but of the shore.

Had the judge therefore charged, as it is imputed to him, that an

exclusive right might be gained by an exclusive occupancy betwixt the shores, he would have been in error; but he pointedly said, that no other advantage could be had on the water than was had from the ownership of the land. But the wrong charged in the declaration is a disturbance, not of the plaintiff's easement in the landing, but of an alleged right to an ancient ferry; and hence, it is argued, the evidence did not support the count. Had there been a prayer for direction to that effect, it must have prevailed, for the variance would have been fatal; but nothing like it is perceptible on the record: and, indeed, to have defeated the plaintiff on that ground, would only have protracted the contest, by reserving the determination of the right for another law suit. In starting the point here, the defendant has slipped his time.

The title to the *locus in quo* is in the defendant's lessor, and a material question was whether the plaintiff had not acquired an exclusive right to use it, by a presumptive grant of one of the lessor's predecessors; as to which, the judge charged that a grant presumed from exclusive enjoyment is also exclusive. The extent of the right is doubtless determinable by the nature of the use; and the principle admits of a ready application to positive enjoyment, in order to carry the right to the extent of it, the difficulty being to know whether it may not be carried even further by a want of actual participation on the other side. There is a plain implication of exclusive right, where the full benefit of the supposed grant could not be had from a concurrent enjoyment of it; as in the case of a pew barely sufficient to accommodate the occupant's family. In the case of a way, the right is not necessarily exclusive, as was admitted in Kirkham *v.* Sharp, 1 *Whart.* 333. The rule seems to be, that the grant shall not be extended beyond the purpose to be answered by it; nor ought it in reason to be. The presumption being that there was an actual grant, there is no room to suppose the grantee paid for, or the grantor parted with, more than was adequate to the purpose. Accordingly, in Martin *v.* Goble, 2 *Camp.* 322, a plaintiff who prescribed for a window which admitted more light than was necessary for the business of a malthouse, of which it was part, was not allowed to maintain an action for the erection of a wall which shut out the excess. The proper inquiry below, then, was whether the privilege to land passengers on the defendant's soil, would have been curtailed by a concurrent use of it; and it presented a question of fact which was, perhaps, not of easy solution. The place was used only at high, or very low water, and at irregular times of the day. A common landing might be alternately used without collision, by boats plying exactly at stated intervals, and even that is barely possible; but the difficulty is insurmountable where, as on our fresh water rivers, the ferry boat plies whenever a passenger presents himself. In all such cases, the jury ought to presume the right to be exclusive, whenever its value would be lessened, in the least degree, by participation. In

[Bird v. Smith.]

addition to the presumption from enjoyment, there was at least some parol evidence of an exclusive grant, which was also for the consideration of the jury.

Another material question was whether the use of the easement had been so notorious as to give notice of it to subsequent purchasers. At common law, an innocent purchaser of a legal title took it clear of trusts and equities, but not of legal conveyances, whether known to him or not; but our recording acts, which designed to make all conveyances matter of record notice, put even legal conveyances on the footing of equities. An actual conveyance of a title to an easement is a legal one, which admits of registration, but a conjectural one does not; and hence a necessity to affect a purchaser of the soil, with notice of the latter through some other channel than the public register. By Billington *v.* Welsh, it was settled that possession, to have that effect, must be several, distinct, and so notorious as to strike the eye. It was not said that it must be continuous and unceasing; nor could the enjoyment be so, in the case of an easement, for it could not be kept so uninterruptedly in use as to leave the notoriety of it without break or interval; and a rule so strict as to require it, would extinguish the title to it at the coming in of the first purchaser. The law, however, is not so unreasonable as not to allow of those ordinary intermissions that are incident to the business to which the easement is subservient. Moreover, it is sufficient, where it exists, that there is something in the aspect of the premises to put a purchaser on his guard. In Alexander *v.* Kerr, 2 *Rawle* 83, a question was made whether the purchaser of a mill was bound to take notice that the dam sometimes flooded the land of an adjoining proprietor; and, as the probability of the fact was apparent to the eye, it was held that there was enough to lead him to an inquiry. In like manner, was there not enough to lead the defendant's lessor and his predecessor to the fact that the land below was occasionally used for the purposes of this ferry, when it is considered that the upper landing, with its road, was but a few yards above the plaintiff's boundary? that it was obvious a boat could not reach it at high water? and that to meet such a contingency, there was a visible landing-place, with a road to it, at the *locus in quo*, the object of which must have been suggested by the aspect of the premises?

It is argued, however, that the certificate of the commissioners in 1808 was the origin of a new grant which, supplanting the Connecticut title, purged the land of its incumbrances; and that it consequently extinguished any grant of the easement in question, which existed at the time. The act of 1799 and its supplements, however, were passed, not to extinguish, but to confirm the Connecticut title within a particular district. The primary one was treated as confirmatory in Avery *v.* Dailey, 4 *Serg. & Rawle* 281; and that it was not styled so in the act itself, is probably because an obnoxious act bearing that name had just been repealed. Its provi-

[Bird v. Smith.]

sions, however, were confirmatory. Its declared object was to ascertain the settler's rights for confirmation by a patent, and it would have been strange had not their accessories also been confirmed. It is certainly true, that a conveyance on the basis of a Connecticut right, was declared to be illegal by the act of 1802, and it must be admitted that scruples were felt by some of us on that head in Barney *v.* Sutton, which was consequently ruled on another point; but from the operation of that act were expressly excluded all the lands in the seventeen townships which were, or should be, submitted to the commissioners under the act of 1799. Even had the assertion of such a title been previously unlawful on grounds of general policy, the proviso would have implicitly legitimated it in the excepted instances. But it was prospectively legitimated by the act of 1799 itself, which it was not the purpose of the act of 1802, in the least, to repeal or disturb; for the rights of the settlers could not be ascertained without receiving and acting on their conveyances as they might stand at the time. The evidences of their title were to be delivered up and deposited in the land office, but not cancelled; for a certified copy of one of them was allowed to be competent evidence in Carkhuff *v.* Anderson—a case which is decisive of the present; for it is impossible to understand why an incumbrance by grant shall be void, while an incumbrance by judgment shall be valid.

It is scarce necessary to add that the admissions by a grantor of the land; while he owned it, were competent evidence against the defendant claiming under him; or that the widow, from whom the plaintiff derives title, was a disinterested witness. She had conveyed her whole estate in the premises without warranty or covenant; and though there was a parol agreement by the plaintiff to pay her a yearly stipend, its continuance was not dependent on the enjoyment of the easement. The bills of exceptions are therefore groundless.

Judgment affirmed.