Edmonds, J.
 


 (DissenUng.)
 
 — The plaintiff is the owner of a farm of land, in the county of Columbia, on the east bank of the Hudson river, which has a front of two thousand feet on that river. The river is navigable there for ships of the largest tonnage, and the tide ebbs and flows more than forty miles higher up the river. Both above and below this spot, the river is in common and public use for purposes of ferriage, fishing and navigation.
 

 The defendants were incorporated in 1846, with authority to construct a railroad from the city of New York to the city of Albany, through the counties immediately bordering on the east shore of the river, and were authorized to enter upon any land or water, for the purpose of surveying, constructing and maintaining their road; but all real estate thus entered upon, if not
 
 *499
 
 voluntarily granted or given, or purchased at a price mutually agreed upon, should be appraised in the manner pointed out in *the statute, and the amount ^ of the appraisal be paid by the company to the *- owner.
 

 Pursuant to the authority thus given, the defendants entered upon the Hudson river, in front of and adjacent to the plaintiff’s farm, between ordinary high and low-water marks, and constructed a line of solid embankment, along the whole front of his farm, so raised and elevated that its surface is about five feet above the ordinary high-water mark of the river, and forms a complete barrier to the passage of boats, vessels and other craft through the same, so that the plaintiff is prevented from and obstructed in the passage of vessels, &c., to and fro, between his farm and the channel of the river, and is deprived of all means of getting from his farm to the river with vessels, &c., for the purpose of removing produce, and other lawful purposes. None of the plaintiff’s land was taken by the defendants, and it is insisted, that, consequently, no damage which he may have sustained, could be appraised in the mode pointed out in the statute, for that mode of making compensation is confined to cases where land of the party injured is actually taken by the company. The company has not in any other manner compensated him for his damages, and, therefore, he brought this suit to recover them. The defendants demurred to the complaint, and judgment was given for the defendants, both at special and general term, in the court below.
 

 The question involved is an important one, being simply whether, by the act of the legislature, the plaintiff can be deprived of, or injured in, his riparian ownership on the bank of a navigable river, without his consent, and without receiving any compensation therefor. It is not disputed, that the act of the defendants has thus cut off his farm from its former access to
 
 *500
 
 the channel of the navigable waters of the Pludson, and that that act was authorized by the statutes passed by the legislature. The question raised is, whether that can be done without affording him just compensation ?
 

 * 546 1 *^e provision of the constitution is, that “ pri- -■ vote property shall not be taken for public use, without just compensation.” And it has already been held, so that we may now regard it as settled law in this state, that land taken for a railroad is taken for a public use. Thus, the question arises, whether riparian ownership on navigable waters is private property, so that it must be paid for, when taken for the public use. Its examination involves the inquiries: 1. What are the .rights of a state as to the soil over which the tide ebbs and flows in a navigable river, between low and high-water marks ? 2. What are the rights of the owner of the uplands adjacent and fronting on the river ?
 

 It is a rule of the common law, that the crown, in England, or with us, the state, is the source whence flows all title to land in the state; and hence, that whatever is not vested in the citizen, in individual ownership, remains still in and belongs only to the state.
 

 When regarding the rights of the state in respect to lands, we must not be unmindful, that it has two interests, one governmental, and the other proprietary. Or, as it is divided by M. Prudhon, in his Traite du Domain Public,
 
 the.public domain,
 
 which is that kind of property which the government holds as mere trustee for the use of the public, such as public highways, navigable rivers, salt springs, &c., and which are not, of course, alienable; and the
 
 domain of the state,
 
 which applies only to things in which the state has the same absolute property as an individual would have in like cases. (See American Jurist, No. 37, p. 121.) This distinction has not always been carefully observed. Before
 
 magna charta,
 
 all the
 
 jura regalia
 
 were regarded as the private property of the crown, which the king might alienate, and hence, there
 
 *501
 
 were grants of several fisheries in the waters of the sea, and of navigable rivers, which were thenceforth held in severalty by individuals, in derogation of the common right vested in all the subjects. These grants were a source of revenue *to the crown; at the same ... time, if continued, they would have surrounded *- the kingdom with private monopolies in the waters of the ocean.
 

 Chapter 16 of the great charter was aimed at the redress of this evil. From that time, no such grants have been made, though those which previously existed are frequently spoken of in the reports, and are calculated to mislead as to the right of the riparian owner, unless their origin is kept constantly in view. But with this exception, the distinction I have referred to is often recognised, and ought not to be overlooked by us on this occasion.
 

 Rivers in which the tide does not ebb and flow, though declared to be public highways, are nevertheless private property, and the soil, to the middle of the river, belongs to the riparian owner, subject only to the easement of the public use. But in navigable rivers, where the tide does ebb and flow, the soil belongs to the state, up to ordinary high-water mark; the riparian owner, unless he has a special grant, owning no farther than to high-water mark. But this ownership of the state is also subject to the public use. The owner, in either case, may exercise his proprietary interest, by erections on the soil of the river, provided that such erections do not interfere with the public use, or navigation, of the waters covering the soil.
 

 This right of property is, in both instances, “ affected by servitudes of public interest,” and is, in all respects, analogous to the property in fee of any land, subject to a public or private right of way, or any similar easement. It is absolute and complete in every respect, not incompatible with the enjoyment of the road or path, by
 
 *502
 
 those entitled to its use; for it is a general principle, governing every such servitude, whether of public or private interest, that nothing passes as incident to an easement, but that which is requisite to its fair enjoyment.
 
 (Commissioners of Canal Fund
 
 v.
 
 Kempshall,
 
 26 Wend. 414; 5 Mason 195; 3 Kent’s Com. 432.) These principles are fully sustained and asserted in our state, after mature consideration and several conflicting * _. .. opinions, in the *
 
 Canal Commissioners
 
 v.
 
 Peop
 
 le (5 Wend. 444);
 
 Canal Appraisers
 
 v.
 
 Tibbetts
 
 (17 Id. 590);
 
 Starr
 
 v.
 
 Child
 
 (20 Id. 149); and
 
 Commissioners of Canal Fund
 
 v.
 
 Kempshall
 
 (26 Id. 404); see also 3 Kent's Com. 427: and they show a right in the state in navigable waters, independent of and beyond the right of eminent domain.
 

 Though such are the rights of the state, yet, it is well settled, that individuals may acquire and hold separate rights, sometimes conflicting and sometimes consistent with, and in subordination to, the rights of the state. Though, since
 
 magna charta,
 
 the sovereign power cannot make a grant of a navigable river, that shall interfere with its public use, yet, it may grant the soil, subject to the public right, and thus put the citizen in the place of the state, as to the ownership, and give to him the same rights in a navigable river, which the riparian owner has in the soil of rivers which are not navigable.
 

 The senator who delivered the opinion of the court of errors, in 26 Wend. 419, uses language so general, that it may imply the right of the state to grant its whole interest, viz.: “A navigable river, that is an arm of the sea, the water and soil thereof.” But it must be remembered, that the case then before the court was in respect to a river not navigable, and his language is to be taken in connection with, and as modified by the facts of that particular case. For he surely could not have overlooked the fact, that no such grant of a navigable rh er is now held good in England, unless by prescrip
 
 *503
 
 tian, or by a grant whose date can go behind
 
 magna charta.
 
 The very cases he refers to, of the Boyne, in Ireland, in Dav. 152, and of the Severn, in England, in 4 Burr. 21, 64, show this distinction. This, however, is not very material, except to remove an impression which might otherwise obtain erroneously, from the language used in that case.
 

 The practice and the statute with us, as well as the rulings of the courts, show that the state is constantly in the habit of making grants of land under water in navigable rivers, and that *those grants are re- ^ garded as vesting in the grantees the absolute *- ownership of the soil. Our statute (1 R. S. 208) confers on the commissioners of the land-office the power to grant so much of the lands under the waters of navigable rivers or lakes, as they shall deem necessary to promote commerce, but the grants convey no other power than to erect docks and collect dockage. (Laws of 1835, c. 232.) And the legislature is in the habit of granting, by special laws, even more extended interests. Thus, showing the uniform assertion by the state, of its right of ownership in the soil of navigable rivers.
 

 But the question recurs, has the riparian owner no right or interest in a navigable river, except what he can prescribe or show a grant for? Upon the answer, depends the plaintiff’s right to recover in this case. He claims, that he has a right to the free navigation of the river; he has that, undoubtedly, but he has it in common with all the other citizens of the state. If that right shall be interfered with by any erection, his remedy is by proceedings as for a public nuisance, and not by an action for damages, unless that public nuisance shall work a private and peculiar injury to him. This is the extent of the right which he has by virtue of his capacity as a citizen of the state, and which is one ground of his claim as asserted in this case.
 

 But as riparian owner, he has something more, some
 
 *504
 
 thing that is valuable to him, and belongs to him, individually, and to the exclusion of any enjoyment by others in common with him. Let us pause a moment, and see what that is, and see whether it is property for any injury to which he may recover damages.
 

 I. He has a right to navigate the river, not merely up and down the stream, to which alone the court below confined its attention, but across the river, from the channel to his own land, and from the opposite shore to the same land, involving herein the privilege of landing on his own bank, from the channel and the opposite shore, and also the privilege of embarking himself and others, and the produce of his farm, and other goods * 550 1 ^erefrom. *And this privilege is not confined ^ or limited to the opposite shore, but extends to all points on the river, from its mouth to its source, or, at least, so far towards its source as it may be navigable for any one. So that, if he is cut off from the channel, he is cut off from the privilege of navigating from his land to all parts, or any part, of the river.
 

 II. There are two inchoate rights, if I may so term them, which belong to his riparian ownership, and of which he is deprived. One is the right to establish a ferry to the opposite shore, which under our statute belongs only to the “ owner of the land through which the highway adjoining the ferry shall run” (1 R. S. 526); and the other is the right to á grant of the land under water, which under our statute cannot be made “to any person other than the proprietor of the adjacent lands” (1 R. S. 232). Of his ferry-right he is entirely deprived, because he has no access to the opposite shore from his land. And of his right to the land under.water he is either totally or partially deprived. Totally, if the defendants become by their erections “the adjacent proprietor,” of which there may be a question; and partially, if he still continue such proprietor, because the defendants have taken possession of the very land under
 
 *505
 
 water, to a grant for which he had an exclusive or prior right under the statute.
 

 This ferry-right is, however, something more than a mere inchoate right under our statute. It is a right to establish a private ferry to the opposite shore, and is properly appendant to the soil, and it is also a right to control the terminus of a ferry from the opposite shore to his own. (Angell on Tide Waters 172;
 
 Bird
 
 v.
 
 Smith,
 
 8 Watts 434;
 
 Chess
 
 v.
 
 Manown,
 
 3 Id. 219.) The right to a grant of the land under water, includes the right to build wharves. In some of the states — Massachusetts and Rhode Island, for instance — by special ordinance, the riparian proprietor owns to low-water mark, and in some cases, below it. In those states, the right to build wharves is held to belong ^exclusively to the ^ owner of the upland, and is valuable property, *- capable of being granted. (Angell on Tide Waters, ch. 7;
 
 East Haven
 
 v.
 
 Hemingway,
 
 7 Conn. 186.) It is the same, in the vicinity of New York city, where the land under water has been granted by the state to the city for public purposes.
 

 III. He has the right of fishing in the river, and to use his land for the purpose of drawing and drying nets upon it, and erecting buildings to accommodate his fishery. The fishing in the channel of the river, by set nets, by means of poles, is prohibited by law, between the city of New York and the dam at Fort Edward. (1 R. S. 688.) And it may be, that there is no lawful mode of fishing in the channel so profitably as by drawing the nets on the shore, or on the flats, if there are any, in the middle of the river. From using his own shore, and from access to such flats, from his land, he is alike deprived by the defendant’s erection.
 

 He has the sole right of fishing with nets or seines, in connection with his own land.
 
 (Hart
 
 v.
 
 Hill,
 
 1 Whart. 138;
 
 Coolidge
 
 v.
 
 Williams,
 
 4 Mass. 140;
 
 Brink
 
 v.
 
 Richtmyer,
 
 14 Johns. 255;
 
 Lay
 
 v.
 
 King,
 
 5 Day 72.) This exclusive right
 
 *506
 
 has been considered, in Pennsylvania, to give all the owners of land on the Schuylkill such great advantages, that it has been hardly worth while for any other persons to attempt to fish with seines, and the right of property in front of the river is therefore valuable, and in some spots is rented for a considerable sum annually.
 
 (Shrunk
 
 v.
 
 Schuylkill Navigation Co.,
 
 14 Serg.
 
 &
 
 Rawle 71.) No other person than the owner can use the bank for that purpose, unless by grant from him
 
 (Gray
 
 v.
 
 Bond,
 
 2 Brod. & Bing. 667); and such right is regarded as an easement, and maybe presumed by twenty years’ enjoyment. (28 Lond. Law Mag. 337;
 
 Cortelyou
 
 v.
 
 Van Brunt,
 
 2 Johns. 357.) This right of fishing means the exclusive right, which every owner of land on the margin of a river has, to use his own property for the purpose of drawing a seine, or practising any other device for catching fish. (14 Serg. & Rawle,
 
 supra.)
 


 IV. To his riparian ownership is attached the right to * 552 1 own, as sePara'te> individual property, such ^ additions to his land as may be gained from the river by alluvion or imperceptible increase. (Hale, De Jure Maris, c, b; 2 Bl. Com. 261;
 
 King
 
 v.
 
 Yarborough,
 
 3 B. & C. 91;
 
 New Orleans
 
 v.
 
 United States,
 
 10 Peters 662.) In this is included the sea-weed that may be thrown up, in such manner as to become one of those marine increases by slow degrees, which belong to the adjacent owner. Its slow increase, and its usefulness as a manure, and a protection to the bank, Kent, C. J., says, in
 
 Emans
 
 v.
 
 Turnbull
 
 (2 Johns. 322), will, upon every just and equitable principle, vest the property of the weed in the owner of the land.
 

 V. He has a right to use the water of the river for the purposes of his farm, and to carry on his business on his land, whatever it may be; to irrigate his land, to water his cattle, to wash his sheep, for his aquatic fowls, to bathe in for health, or to sail upon for pleasure, &c. In fine, to put the water which washes his bank to what
 
 *507
 
 ever uses his pleasure or his business may prompt; provided only, that he do not interfere with the
 
 jus publicum,
 
 or public right. I do not understand whether the plaintiff is entirely cut off from the water of the river, or whether he is only cut off from the channel. That might be material, on the question of the amount of damages, but it is not material, as to the point now under consideration, for the principle which would allow another to cut him off from the channel, would allow of his exclusion entirely from the waters of the river.
 

 VI. Attached to his riparian interest, is also the right to lade and unlade on the bank. In England, the right to establish ports for this purpose is claimed as a prerogative of the crown, but the king may not grant a liberty to unlade, without the owner’s consent, for that would be to prejudice the private right. (Hale, de Portibus 73.) In this country, public landing-places may be established by grant or prescription, which can be discontinued only by the legislature.
 
 (Commonwealth
 
 v.
 
 Tucker,
 
 2 Pick. 44.) But the right to land, generally belongs to the owner of the adjoining *bank, and it is often valuable. He has been held to *- have the power to control the subservient and indispensable right of embarkation and landing, even at the terminus of a public road.
 
 (Bird
 
 v.
 
 Smith,
 
 8 Watts 434 ) That related to the owner of a private ferry, who, it was ruled, had no right to land boats and passengers at the
 
 terminus
 
 of a public highway, between high and low-water mark, on the opposite margin of the river, without the consent of the owner.
 
 (Post
 
 v.
 
 Pearsall,
 
 22 Wend. 425.)
 

 VII. He has a right of way over the soil, between high and low-water mark, from his land to the channel of the river: and of that he has been or may be deprived, if such erections are allowable. And finally, he has right to be, and to continue riparian owner, and to
 
 *508
 
 be protected against a third person’s stepping in between him and the waters of the river, and without his consent assuming that riparian ownership, either in whole or in part, in his stead.
 

 Such are the rights of the plaintiff. Those of the defendants can be much more briefly stated. The defendants have no grant from the state to the land which they occupy; the state has not, as owner of the shore, made any conveyance to them. It has merely, in the exercise of its right of eminent domain, conferred on them the power to enter upon these lands, for a public use, in the same manner and by the same words, by which it has authorized them to enter upon any lands of any private person along the whole line of the road. If the state had granted as owner, it might, at its pleasure, have exacted or remitted compensation for the soil. But when exercising its sovereign power of authorizing property to be taken for public purposes, it cannot release the right which the individual owner has to compensation, nor discharge its agents from the duty of making it.
 

 Such being the condition of the parties, and the wrong done by the defendants being admitted by the * 554 1 P-*-ead™§s’ *he question ^arises, whether the rights of the plaintiff, as above stated, are property in him, for an injury to which he may claim compensation, or whether the wrong which he has confessedly suffered, is
 
 damnum absque injuria,
 
 affording him no cause of action ?
 

 I remark, at the outset, that this does not depend so much upon the language of the particular statute to which the defendants refer for their authority to enter upon the land in question, as it does upon general principles of law. It is a mistake, to suppose that the defendants are bound to make compensation only in the cases mentioned in the statute. Their duty in this regard springs from the constitution, and has this limit only, namely, whether it is private property that is
 
 *509
 
 taken by them. The provisions of the statute for the appraisement of damages, are not inserted there, for the purpose of limiting the company’s liability, but simply for the purpose of providing an easy and summary mode in which they may perform their duty. If they choose not to avail themselves of that mode of ascertaining what compensation they are to make, or if any party aggrieved do not see fit to resort to it, the company is by no means discharged of its liability to make compensation, for that flows from a law higher than the statute which spake them into being, and in solving the question before us, we must have resort to that paramount law and its just and established reading.
 

 Under our institutions the right of' eminent domain— and that, be it remembered, is all under which the defendants can claim in this case — is ever to be exercised in subordination to private right.
 

 There is a conflict in the cases (which, perhaps, I ought to pause a moment to consider), upon the question, whether the right of the state to the soil of navigable rivers, is incident to its sovereignty or a proprietary interest. In the
 
 Commissioners of the Canal Fund
 
 v.
 
 Kempshall
 
 (26 Wend. 419-20), the senator who delivered the opinion of the court intimates, that even if the Genesee river was a navigable river, this state, by its cession to Massachusetts of the ownership of a large tract of country, which included the river, conveyed the *right of property, although it reserved the sovereignty. But in the case of
 
 Pollard
 
 v.
 
 Hagan
 
 (3 How. 222), the United states supreme court held, that the United States, by admitting Alabama into the union, and ceding to it thereby the sovereignty, ceded the right to the soil of navigable rivers, although they expressly reserved to themselves the ownership of all the lands they had previously been seised of -in the state. The first of these cases seems to go upon the idea, which I have already alluded to, as erroneous since
 
 magna charta,
 
 [*555
 
 *510
 
 viz., that the state had a right to assign its sovereignty in navigable waters.
 

 In
 
 Martin
 
 v.
 
 Waddell
 
 (16 Peters 367), where the right to the fishing-grounds in New Jersey was involved, the United States supreme court held, that the principle that the king could not alienate the soil under navigable waters, so as to give an exclusive right, must be regarded as settled by the case of
 
 Blundell
 
 v.
 
 Catteral
 
 (5 B. & Ald. 91). But this seeming conflict may not be of much importance, for here is no grant of a proprietary interest, but simply the exercise of the right of eminent domain, which is, with us, always subordinate to private right, so far as compensation is concerned.
 

 I return to the question remaining for our consideration, namely, whether these rights of the riparian owner are property, so that compensation must be made, when it is taken for a public use. A strong case on this subject is that of
 
 Bowman
 
 v.
 
 Wathen
 
 (2 McLean 376), where Mr. Justice McLean, after putting the Ohio river upon the same footing as navigable tide-waters, says, “it is enough to know, that the riparian right on the Ohio river extends to the water, and that no supervening right over any part of this space can be exercised or maintained, without the consent of the proprietor. He has the right of fishery, of ferry, and every other right which is properly appendant to the owner of the soil; and he holds every one of these rights, by as sacred a tenure, as he holds the land from which they emanate. The state cannot, either directly or indirectly, divest * 556 1 any one *°f those rights, except by the -* constitutional exercise of the power to appropriate private property for public purposes.” This language was used in a case kindred to that now before us, and in which it was ruled, that the right to a ferry attaches to the riparian proprietor, and cannot be taken from him without compensation. And the court say— “ Where land is bounded by a water-course, these rights
 
 *511
 
 (of riparian, ownership) attach to the proprietor; and it is immaterial, whether the water-course be a navigable river, or a smaller stream.”
 
 “
 
 They are connected with the soil, and grow out of it, the same in principle as an advowson or rent. It is an incorporeal hereditament and lies in grant. (Co. Litt. 335 b.) It is classed with real estate, and is subject to the laws which govern the realty; and so is rent or an advowson.” “ The right is appurtenant to the soil, but he (the riparian owner) may convey it and still retain the fee in the land; and by such conveyance, the grantee holds the right which the statute was designed to protect.” (The prior right to a ferry in the riparian proprietor.)
 
 “
 
 The grantee of the right may, in the strictest sense, be considered, for all the purposes of the ferry, the proprietor of ' the land on the margin of the river. This right is real estate; it descends to heirs, as such, is subject to dower, and to all the incidents of real property.” This case was affirmed by the United States supreme court, on appeal. (1 How. 189.) See also 3 Kent’s Com. 421, 5th ed., note.
 

 In Kentucky, this right (as to ferriage) is held to be a franchise incident to the land, and valuable as property.
 
 (Carter
 
 v.
 
 Kalfus,
 
 6 Dana 43.) In that case, it was held, that the right to ferriage was like that to portage, and was valuable property, and that the unsuccessful applicant for a ferry, who owned the land on the bank, was a party aggrieved under the statute, by reason of this right. The right to portage here spoken of was held in the case of
 
 Charles River Bridge
 
 v.
 
 Warren Bridge
 
 (11 Peters 638), to be a franchise, and, as such, valuable property, liable to be compensated for, when taken or injured for a public use.
 

 The case of
 
 Gardner
 
 v.
 
 Village of Newburgh
 
 *(2 Johns. Ch. 162) was cited for the principle *- 55 ‘ applicable to the question. In that case, the right to the rise of the water in other ways, was also held to be property. There, water running through the plaintiff’s
 
 *512
 
 land was attempted to be taken out, above it, for a public use, without compensation. The chancellor restrained the act by injunction, declaring it to be a clear principle of law, that the owner of the land is entitled to the use of the stream, and the law gives him ample remedy for the violation of this right. In
 
 Boston and Roxbury Mill Dam Co.
 
 v.
 
 Newman
 
 (12 Pick. 467), a corporation was authorized by the legislature to create water-power by penning tide-water in a full basin, and' excluding it from another, which was to receive it through race-ways, and the person who owned the fiats in the receiving basin suffered an injury by the exclusion of the water from his land, and was thereby prevented from beneficially using his land; it was held, that he was entitled to compensation. In three cases of the United States supreme court,
 
 City of Cincinnati
 
 v.
 
 Lessee of White
 
 (6 Pet. 431),
 
 Barclay
 
 v.
 
 Howell’s Lessee
 
 (Id. 498), and
 
 New Orleans
 
 v.
 
 United States
 
 (10 Pet. 662), the right of ferriage, and the right to a landing-place were held to be appurtenant to the adjacent land, even in navigable rivers.
 

 From this examination, I arrive, very naturally, at the conclusion, that the plaintiff has rights, as riparian owner, which the defendants have invaded, and that those rights are property, more or less valuable, for the destruction of, or injury to, which, the plaintiff has a valid claim to compensation.
 

 But the question does not arise, whether 'the defendants ought, ere" this, to have had the plaintiff’s damages assessed, in the manner pointed out in their act of incorporation, for this suit does not aim at ousting the defendants of their possession of the soil covered by their embankment, or at trying their title to it, or right to occupy it.. If it were so, it would be necessary for us to examine some of the cases which seem to deny the right of the state, either in its proprietary character, as owner * 1 of the soil, or in the *exercise of its right of 0 -* eminent domain, as the sovereign, to make any
 
 *513
 
 grant of the soil of navigable rivers. I, therefore, purposely abstain from expressing any opinion as to the right of the defendants to occupy the land in question, until compensation be made.
 

 But the action is to recover damages of them for such their occupation, and that does not involve the question, whether they have any right to occupy at all, but whether, for their occupation, they are not bound to respond in damages; the action affirming the occupation rather than disaffirming it. Besides, as no “land” of the plaintiff is taken by the defendants, though his “property” is, there may be a question, whether the defendants could avail themselves of the privilege of having his damages appraised, in the mode pointed out in the statute. Upon that point, also, I do not mean to express any opinion, it being sufficient, to ascertain whether the plaintiff can recover any damages for the injury to such a right as, it seems, he has in this case, it being in the nature of a franchise or incorporeal hereditament, and not land or the soil itself.
 

 The cases are numerous which show that he. may. Thus, for obstructing a water-course,
 
 Anon.
 
 (4 Dall. 147),
 
 Shaw
 
 v.
 
 Crawford
 
 (10 Johns. 236),
 
 People
 
 v.
 
 Canal Appraisers
 
 (13 Wend. 371); for diverting a water-course,
 
 Gardner
 
 v.
 
 Newburg (supra), Haynes
 
 v.
 
 Gault
 
 (1 McCord 543),
 
 Palmer
 
 v.
 
 Mulligan
 
 (3 Caines 319); for obstructing the navigation in a navigable river,
 
 Bacon
 
 v.
 
 Arthur,
 
 (4 Watts 436),
 
 Hogg
 
 v.
 
 Zanesville Manufacturing Co.
 
 (5 Ham. 410); for intruding on a several fishery,
 
 Carter
 
 v.
 
 Murcot
 
 (4 Burr. 2162),
 
 Hooker
 
 v.
 
 Cummings
 
 (20 Johns. 90); for destroying a landing-place (in addition to the value of the ground),
 
 Ex parte Rogers
 
 (6 Cowen 551); for obstructing the free passage of the owner of an adjacent lot, unto and upon the street, to and from his land,
 
 Fletcher
 
 v.
 
 Auburn & Syracuse Railroad Co.
 
 (25 Wend. 462),
 
 Chapman
 
 v.
 
 Albany & Schenectady Railroad Co.
 
 (10 Barb. 367); for injury to the franchise of a turnpike company,
 
 Seneca
 
 
 *514
 
 ^
 
 Road Co.
 
 v.
 
 * Auburn & Rochester Railroad C
 
 o.
 
 (5
 
 Hill 170),
 
 In re Flatbush Avenue (1
 
 Barb. 294).
 

 The general doctrine is briefly stated by the reporter, in his note to 6 Cowen 552, where he opposes the principle of the canal appraisers, in allowing as damages only the value of the land for agricultural purposes, and excluding the value derived from a landing-place and a fishery. He says, and, I think, very justly — “The value- arises from the local situation and advantages; the worth in market and the revenue derivable, is to be taken into the account.” And it is also conceded by the court of errors, in
 
 Commissioners of Canal Fund
 
 v.
 
 Kempshall
 
 (26 Wend. 421). “The proprietary interest in the water-power is a necessary incident to a freehold grant, and entitles the owner to compensation for any appropriation or suspension of these privileges for the public use.” When private property of any description is destroyed, and its beneficial enjoyment is essentially impaired, in the prosecution of public works, it is taken for public use. The state has no more right, by a,n artificial erection like the state dam, to overflow and destroy a valuable water-fall in a tributary stream, without paying for it, than it has to overflow and destroy a valuable farm upon the adjacent shore. In principle, they stand upon the same ground.
 
 People
 
 v.
 
 Canal Appraisers
 
 (13 Wend. 373).
 

 I do not regard the case of
 
 Lansing
 
 v. Smith, in 8 Cowen 146, and in error, 4 Wend. 9, as at all conflicting with the view I have taken of this case. There, the riparian owner was not entirely cut off from his rights in the water, but, by a public improvement, others were also permitted the enjoyment of similar rights, and thus, the value of his was impaired, and the only question was, whether the right of eminent domain might be so exercised, by authorizing a public improvement, which would extend to others the right which the riparian owner had, from his position, enjoyed exclusively, but to
 
 *515
 
 which exclusive enjoyment he had no valid claim. And the court for correction of errors was careful not to affect the question now raised, and which was not raised in that case. The chancellor, who delivered the opinion *of the court, says, “ whether the legislature ^ could grant the right to any person to build a *- wharf in front of the plaintiff’s, so as to destroy his, entirely, is a question which is not necessary now to discuss.” And yet that is, as I understand it, the precise 'question which is raised in the case now before us. These defendants have made an erection in front of plaintiff’s land, which has entirely destroyed his water-right, with all its privileges, and the question is, can the legislature authorize them to do so, without making compensation ? For the reasons I have above given, I think, they cannot, and I am, therefore, of opinion, the plaintiff ought to recover.
 

 Judgment affirmed.
 
 [1]